UNITED STATES of America, Appellee,

v.

Marshall Lee VAUGHAN, Appellant.

No. 72-1636.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 22, 1973.

Decided March 29, 1973.

Rehearing Denied May 1, 1973.

Jim Merz, Oklahoma City, Okl., for appellant.

Floy E. Dawson, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., with him on the Brief), for appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

PER CURIAM.

The defendant was charged with possession of marijuana in violation of 21 U.S.C. § 844, tried, and found guilty. He has taken this appeal, raising only the issue as to the refusal of the trial court to suppress evidence secured by a search of defendant's automobile.

The incident which gave rise to the search arose when defendant Vaughan, a civilian, approached one of the main entry gates to Tinker Air Force Base in Oklahoma. This is a large base with thousands of civilian employees. Although the pickup truck that he was driving had a base decal on the windshield, he was stopped by the gate guards and asked for identification. Due to the possibility that a demonstration against the Vietnam War was imminent, the Base Commander had issued orders that no visitors were to be allowed on the base.

When stopped at the gate, Vaughan stated that he was going to pick up his wife for lunch, and that she worked at the commissary. When asked for identification, he presented the gate guard with an expired Marine Corps Reserve Identification card, which the guard confiscated. Defendant was directed to park by the side of the street. The guard then called his supervisor, and when he arrived the two proceeded to search Vaughan's vehicle. No consent was requested or given. The supervisor reached under the front seat of the pickup where he found a child's coonskin cap. In the cap was a small amount of marijuana, and Vaughan was then arrested.

Prior to trial, Vaughan moved to have the marijuana suppressed, asserting that it had been obtained as the result of an illegal search and seizure. The trial court denied the motion, and this is the error asserted by defendant on this appeal.

■ ■ The Government's position is that a person within the restricted area of a military reservation is subject to having his person and his vehicle searched in the interest of military security. Further it asserts that submitting to search could be validly imposed as a condition to gaining access to a military reservation. Both of these positions are correct; however, the facts of the instant case do not lead to such a ready solution, and we must hold that the search here conducted was improper.

The testimony of the gate guard, William Ladd, who originally stopped defendant, is very significant. A portion is quoted:

"Q [By Jim Merz, appellant's attorney] Now, what was his status, if you know, at the time he [Vaughan] was making request for entering on the base? Was he a visitor or what was he?

"A No, he wasn't visiting, he was going to pick up his wife.

"Q All right, now, assume his card was in proper order, would you have allowed him on the base?

"A At that time, no.

"Q Why not?

"A Because we were on strict security.

"Q How did that relate to visitors?

"A Visitors were not allowed.

"Q No visitors?

"A No vistors, not at that time.

"Q So, he couldn't get on anyway?

"A He couldn't get on."

And later in the testimony:

"Q Now, if I understand you correctly, your testimony was that this man was not going on the base.

"A He would be turned around.

"Q And denied access to the base, is that correct?

"A Yes.

\*     \*     \*     \*     \*     \*

"Q I mean prior to the search, he wasn't going on the base, right?

"A Right."

■ The record demonstrates that the gate guard had made a determination that Vaughan was not going to be allowed access to the base. Also, the commanding officer had ordered there be no visitors, and thus the interest or purpose of the Base Commander in protecting the security of the base was never involved. Defendant was not going to be permitted on the base in any event. Thus in order for the search to be proper, it would have had to meet the standards of a search conducted on any public street. The parties have agreed that there was no probable cause for the search, that Vaughan did not consent to it, and that it was not made incident to a lawful arrest. Thus the search was invalid.

The only case brought to our attention which has considered this type of search, United States v. Crowley, 9 F.2d 927 (N.D.Ga.1922), relied on here by the Government to support the validity of the search, is distinguishable from the case at bar. In the Crowley case, a taxi was being searched pursuant to allowing it access to the base. In this case, a determination had already been made prior to the search that Vaughan would not be allowed access to the base, and the search of his pickup was thereafter decided upon.

■ The Government also points to the large sign posted at the entrance to the Air Force Base and says that consent to the search may be implied. The sign read as follows:

"WARNING. U. S. AIR FORCE BASE. IT IS UNLAWFUL TO ENTER THIS AREA WITHOUT PERMISSION OF THE COMMANDER OF TINKER AIR FORCE BASE. WHILE ON THIS INSTALLATION ALL PERSONNEL AND THE PROPERTY UNDER THEIR CONTROL ARE SUBJECT TO SEARCH."

While we agree, as we said before, that once within the area where security was imposed, a search conducted without probable cause and without consent could be proper. Also the submission to search could be imposed as a valid condition to gaining access to the base. However, once a determination has been made not to allow defendant entry to the base, any search conducted thereafter must meet Fourth Amendment standards.

Defendant was stopped at the gate, and moved then to one side of the street; he never was within the area where security was imposed; instead he was refused entry. Where the precise boundary of the base may have been thus made no difference.

We note, too, the Judge Advocate General's Opinion, 1953/1738, set forth in Volume 3, Digest of Opinions, Search and Seizure, Section 11.1 at pages 769–70, in which it is stated that an incoming person should not be searched over his objection, but should be denied any access to the base.

The case must be reversed and remanded with instructions to grant appellant's motion to suppress the evidence seized during the search in issue.