UNITED STATES of America, Plaintiff-Appellee,

v.

David ELLIS and William P. Gaskamp, Defendants-Appellants.

No. 76–1658.

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1977.

As Modified on Rehearing Granted April 15, 1977.

Leo A. Thomas, Pensacola, Fla. (court appointed), for defendants-appellants.

Clinton Ashmore, Asst. U. S. Atty., Nicklas P. Geeker, U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

CLARK, Circuit Judge:

Consent to search a motor vehicle while on board a Naval Air Station was validly obtained through issuance, acceptance and display of a visitor's pass. The marijuana disclosed by a warrantless search made pursuant to this consent was legally obtained. No hearsay objection barred the introduction of the declaration of a coconspirator which did not affect the objecting defendant. The court had the prerogative to make and strictly enforce a deadline on plea bargaining. The resolution of these issues dictates the affirmance of the convictions of both defendants appealed here.

On Monday, August 11, 1975, David Ellis was a member of the United States Navy stationed at the Naval Air Station, Pensa-

cola, Florida. His assigned living space was on the second level of Barracks 3468. At approximately 4:30 or 5:00 p. m., Emanuel J. Grady, a station investigator who was driving by Barracks 3468 on his way home, observed a male with long hair and dressed in civilian clothing, later determined to be William P. Gaskamp, come out onto a second-level balcony area of the barracks. Grady stopped his vehicle to observe further and saw Gaskamp come out of the barracks and walk toward an automobile parked nearby. Grady testified that after looking around as though to see if anyone was watching, Gaskamp opened the trunk of the car. Grady's full view of Gaskamp's activity at the trunk was blocked, but he saw Gaskamp return to the barracks with a neatly wrapped brown towel tucked under his arm.

With the help of the barracks duty officer, Grady traced Gaskamp to Ellis' room. Grady then went to the door of this suite and, as he was about to enter to determine the reason for the presence of a civilian in this military area, the door was opened by Ellis, and Grady observed a group of people standing near the brown towel which was then spread on the bed. Grady also saw Gaskamp drop something but could not tell what it was. Grady asked Ellis for permission to inspect his room to determine whether he had civilians staying there. David Ellis stated that his brother, Richard T. Ellis, and the defendant Gaskamp, who were civilians, had spent the previous evening in his quarters because they did not have a place to stay. After receiving this information Grady asked all the persons in the room to step out into the lounge area. Present in the room at that time were the two Ellis brothers, Gaskamp, and two other Navy personnel—Christopher Clark and Mark Fredericks.

After the room was emptied, Grady requested permission to inspect Gaskamp's vehicle. When Gaskamp hesitated, Grady asked him if the car was on the base under a visitor's pass. Gaskamp replied that it was. In response to Grady's question, Gaskamp stated that he had read the pass. Grady then asserted a right to inspect the vehicle based upon the consent which the pass acknowledged.[1] A search of the vehicle by Grady revealed 20 plastic bags containing marijuana.

Subsequent to this vehicle search, Bruce Allen Smart, a special agent for the Naval Investigative Service, contacted David Ellis and requested his permission to search his barracks room. That consent was given in writing. The room search disclosed two additional bags of marijuana.

In the course of the trial, Mark Fredericks testified as follows: On a Sunday evening, either one or two weeks before the Monday afternoon searches, David Ellis had said to him that "his brother might be coming in with some grass." On the afternoon of the searches, David Ellis came to Fredericks' barracks room and invited him to come to Ellis' room to "meet his brother and his brother's friend." As the two of them started toward the room occupied by Ellis, they met Christopher Clark who was on his way there also. When Fredericks entered the room of Ellis, he saw two bags of marijuana lying on the foot of a bed. In Gaskamp's presence, David Ellis offered to sell some of the marijuana to Fredericks. At the instant Fredericks picked up one of the bags of marijuana, he saw Grady at the door.

In a statement to Federal Bureau of Investigation Agent David Mitchell, also admitted at trial, Gaskamp stated that he left Fort Worth, Texas, in his automobile at

---

1. The face of the pass states:

---

DISPLAY IN WINDSHIELD WHILE
ON STATION
DESTROY AFTER LEAVING STATION

---

# VISITOR

---

Acceptance of this pass gives your consent to search this vehicle while entering, aboard, or leaving this station.

approximately midnight on Friday, August 8, after purchasing between 40 and 50 baggies of marijuana. He then traveled to Pensacola, Florida, arriving Saturday night, August 9. He spent that night in the barracks on board the Naval Air Station. Sunday night was spent at a motel on the Mobile highway and at approximately 4:00 or 4:30 p. m. on Monday afternoon, August 11, Gaskamp returned to the Air Station and to David Ellis' room at the barracks. There he was told that some buyers for the marijuana were coming. After learning this, he went to the car, obtained two of the bags of marijuana, wrapped them in a towel and carried them back to the room for purposes of sale. Gaskamp's fingerprints were found on one of the baggies containing marijuana found in the room of David Ellis when it was searched. Neither Gaskamp nor David Ellis testified before the jury.

At the conclusion of the joint trial of Gaskamp and the brothers Ellis on a charge of conspiring to possess with intent to distribute marijuana,[2] the trial judge sustained a motion for judgment of acquittal by the defendant Richard T. Ellis, but denied similar motions by David Ellis and Gaskamp. The jury found David Ellis and Gaskamp guilty of conspiracy. Each was sentenced to a term of two years, with six months to serve in a jail-like institution. The remainder of the sentence was suspended and the defendants were placed on probation for two years. Additional two-year special parole terms were also imposed.

The linchpin of the appeals by Ellis and Gaskamp is the validity of the warrantless search of Gaskamp's car. They urge that Grady did not have probable cause nor did he have valid consent from Gaskamp.

 Assuming arguendo that Grady lacked probable cause and exigent circumstances even under the unusual conditions existing here where a civilian vehicle was temporarily located within the confines of a Naval Air Station, Gaskamp, at the time of his entry onto the premises of the Naval Air Station, had validly consented to the subsequent search. A base commander may summarily exclude all civilians from the area of his command. *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976). It is within his authority, therefore, also to place restrictions on the right of access to a base. Here, subjecting one's person and vehicle to search upon request was such a proper restriction. This consent covered the actions of Grady which resulted in the discovery of the initial cache of marijuana. Gaskamp's car was subject to routine search when he passed through the guard station roadblock as he entered the confines of the Naval Air Station, just as it would have been had he presented himself to a Customs Service immigration station at the boundary of the country. Protection of the function of the military installation gave the Navy authorities a right of inspection which is equal in status to the right retained to protect the fiscal and physical integrity of the nation from foreign contraband or tariffed items. *See, United States v. Vaughan*, 475 F.2d 1262 (10th Cir. 1973); *United States v. Collins*, 349 F.2d 863, 868 (2d Cir. 1965), *cert. denied*, 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966). Gaskamp certainly should have realized that his actions in presenting his vehicle to the guard at the entrance to the Air Station with an implied request to drive aboard carried the possibility of an inspection then and there. The same need for preservation of military security gave governing authorities of the base every reasonable right to allow him to drive his car onto the Naval Air Station uninspected, but under terms of a visitor's pass which conditioned his entry and stay on the military reservation upon his consent to the search of the vehicle at anytime it was on Station premises.

 The consent here would not be a valid basis for supporting the search unless it could be determined the consent was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1778, 1792, 20 L.Ed.2d 797 (1968). The issue of voluntariness is to be resolved by considering the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). Gaskamp stated he read the pass. He complied with its written requirement of display on his windshield. His decision to enter the base subject to the possibility of a search can in no wise be considered coerced. To the contrary, the consent was knowing and voluntary and could have left Gaskamp with no reasonable expectation of privacy in his vehicle. The right to make a search pursuant to such consent does not turn on the presence of probable cause. *United*

---

**2.** 21 U.S.C. § 841(a)(1); § 812 and § 846.

*States v. Vaughan, supra; United States v. Fox,* 407 F.Supp. 857 (W.D.Okl.1975). Without reaching the question of whether Gaskamp had a right to turn back at the gate, his offer to remove the vehicle after officials demanded a search came too late.

The parties dispute the relationship of the discovery of marijuana in Gaskamp's car and the search of David Ellis' room. This too is an issue we need not reach. When David Ellis was requested to consent to the search of his barracks room, it was given, and the room search was made pursuant to that consent. Since the car search was legal, it could not have tainted the later procedure. The marijuana discovered in Gaskamp's automobile and that found in David Ellis' room were both admissible in evidence to be considered by the jury which tried this case.

■ The defendant Gaskamp urges that insufficient evidence was offered to prove a conspiracy with the defendant Ellis. This contention is not well taken. Gaskamp's own statement disclosed that he came from Fort Worth, Texas, to Pensacola, Florida, with a supply of marijuana for the purpose of selling it to others. Upon his arrival in Pensacola from Fort Worth, Gaskamp spent one night with Ellis in the military barracks where the sale took place. When he was discovered by military authorities in the room assigned to David Ellis, he was in possession of marijuana he had taken from his car to that room for purposes of sale. Prospective purchasers had been invited to the room by the defendant David Ellis, who, in Gaskamp's presence, had offered Gaskamp's marijuana for sale to those prospects.

■ In a related contention, Gaskamp complains of the court's action in permitting the jury to hear testimony as to a statement made by David Ellis to Mark Fredericks that Ellis' brother was coming to Pensacola in about a week to sell some marijuana. This, Gaskamp contends, was hearsay as to him because it was offered in evidence at a time prior to the establishment of the existence of a conspiracy by David Ellis and others of which Gaskamp was a part. *United States v. Apollo,* 476 F.2d 156 (5th Cir. 1973). When the statement was tendered, Gaskamp's attorney objected to its admissibility until independent proof of conspiracy was developed. In response, the court stated in the presence of the jury, "I think [the statements] will have to be connected up and, if not, will be stricken. The objection is overruled at the time, but government will have the duty to connect them up and you may renew the objection at a later time if he fails to do so." At the conclusion of the government's case, the attorney for defendant Gaskamp did renew his objection and moved that Fredericks' testimony be stricken. The court denied the motion and a similar one presented by defendant Ellis. At the charge conference Gaskamp's counsel took the position that no connection had been established and that he was entitled to a mistrial. In the alternative, the court was requested to instruct the jury that David Ellis' statements were not a part of the evidence which they could consider against Gaskamp. The court refused the mistrial and the instruction on the ground that the statement implicated only Ellis' brother and not Gaskamp. The government took the position that the statement was admissible against the defendant Ellis as an admission against interest.

There was no error in either action by the court. The statement of David Ellis that his brother might be coming to Pensacola with marijuana in his possession did not say anything about Gaskamp. Indeed, this was precisely the argument Gaskamp's counsel made to the jury. He insisted that the acquittal of Richard Ellis demonstrated that the statement lacked any validity. Although the proof implies that Ellis' brother came onto the Naval Air Station with Gaskamp, Gaskamp was not directly or indirectly tied to a marijuana sales conspiracy by anything in David Ellis' words. *Cf., United States v. Grillo,* 527 F.2d 1344 (5th Cir. 1976). It was the overwhelming evidence completely aside from the challenged statement of David Ellis which incriminated Gaskamp in the conspiracy. The large quantity of marijuana found in his car, his fingerprint on the bag of marijuana in Ellis' room, his admission that he brought the marijuana there to sell after procuring it in Forth Worth and transporting it to Pensacola, his unprotesting presence at a time when his marijuana was offered for sale to Fredericks by David Ellis, as well as his association with Ellis and prior use of Ellis' Naval barracks room, constitute the ample proof which supports the jury's verdict.

Evidence adduced against David Ellis was similarly clear, though his own state-

ment properly could have been used to bolster the case against him. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 1575–76, 48 L.Ed.2d 39 (1976).

The defendants urge that the court erred in refusing to allow them to change their pleas to guilty one day after the deadline fixed by the court for plea negotiations had expired. The court's refusal was based upon this court's affirmance of *United States v. Parkerson*, 529 F.2d 1031 (5th Cir. 1976) (no published opinion). *Parkerson* was an appeal from a firearms violation in which the same trial judge involved in the present case directed that plea bargains in that case be presented by July 8, 1975. A request to consider Parkerson's plea bargain struck on July 10, 1975, was refused by the court on the ground that it was past the deadline imposed. The decision of this court consisted of the one word "Affirmed" pursuant to Fifth Circuit Local Rule 21.[3] The record in *Parkerson* discloses that the judge reasoned that strict adherence to his deadline order was necessary for proper scheduling of cases and to save time, difficulty and expense to jurors and witnesses who would otherwise have to be summoned needlessly to attend court sessions. He refused to vary the deadline date because the United States attorney was overworked or understaffed. He concluded that if he varied from his deadline because of this office's workload, he would also have to consider variations for defense counsel similarly situated, with the result that the deadline would become meaningless. The court's action in the present case was based entirely upon this circuit's affirmance of his actions in *Parkerson*.

■ We assume that the prior panel of this court considered that the deference due the prosecutorial prerogative and the rights of the defendant under Fed.R.Crim.P. 11 was outweighed by judicial discretion to control the scheduling of trial procedures in ongoing prosecutions, plus the broad interests of docket control and effective utilization of jurors and witnesses. We decline to weigh other possible considerations, *see United States v. Maggio*, 514 F.2d 80 (5th Cir. 1975), *cert. denied*, 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 405 (1975); *United States v. Ammidown*, 162 U.S.App.D.C. 28, 497 F.2d 615 (1974), because, like the district judge, this panel too is bound by the

precedent in *Parkerson*. *McDaniel v. Fulton Nat. Bank of Atlanta*, 543 F.2d 568 (5th Cir. 1976).

■ Defendants raise other issues which do not merit extended discussion. They contend that the chain of custody of the substance found in Gaskamp's car and Ellis' room was not established from the point of seizure to the point at which its character as marijuana was determined. This contention goes to the weight and not the admissibility of such evidence and was properly left to consideration by the jury.

■ They object to the court's refusal to declare a mistrial at the point Gaskamp's counsel interrupted a statement by Agent Smart that the defendant David Ellis "invoked his right ____." Smart was later allowed to complete the sentence before the jury, and it was that Ellis invoked his right to allow a search of his room. This peculiar way of expressing Ellis' decision to consent to Smart's search does not constitute error. No testimony even intimated that Ellis refused comment or declined to answer questions or otherwise invoked a constitutional right to remain silent or secure counsel at the time of apprehension, see, *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and the jury could not have reasonably read such a notion into Smart's full or partial response. The unique phraseology by the witness does not appear to have been provoked by the prosecution. There was no error in the court's refusal to premise a mistrial on this response.

■ In closing argument the assistant United States attorney made this comment about the witness, Fredericks:

At the most, this young man, and you saw him on that witness stand and you can judge him for what he is worth, he came in here, and he testified, he did nothing more than a normal law abiding citizen would do, and he told the truth and told exactly what happened in that room.

Gaskamp's attorney objected that the prosecutor was vouching for the credibility of his own witness. The government counsel's response, in the jury's presence, was that he had only stated they could accept or reject Fredericks' testimony based on what they observed when he was testifying. On appeal the government takes the position that

---

3. *See NLRB v. Amalgamated Clothing Workers of America*, 430 F.2d 966 (5th Cir. 1970).

the argument was in response to Gaskamp's counsel's previous argument that the jury should reject the testimony of the same witness. The lawyer's statement was: "I say no, that that cannot be believed because it is not true." The objection was overruled.

Attempts to bolster a witness by vouching for his credibility are normally improper and error.

> [T]he inquiry should be whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt.

*McMillian v. United States,* 363 F.2d 165, 169 (5th Cir. 1966). The jury in the case at bar could not reasonably have concluded that the prosecutor was basing his comment on unknown evidence. To the contrary, he stated that the jury could "judge him for what he was worth" immediately preceding the assertion that Fredericks "told the truth." Coupled with the explanation given to the judge in their presence, any reasonably minded juror would have concluded that the prosecutor was urging the jurors to decide the issue for themselves from the evidence. *United States v. Jackson,* 485 F.2d 300, 303 (7th Cir. 1973). While we have noted that it is "dangerous business" for a prosecutor to vouch for the honesty of its witnesses, *United States v. Prince,* 515 F.2d 564, 566 (5th Cir. 1975), comments upon testimony in light of the record are proper. *United States v. Davis,* 487 F.2d 112, 125 (5th Cir. 1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974). Indeed, there is no material distinction between what transpired here and what happened in *Davis.* Moreover, the statement was fairly in reply to the comments made by defense counsel. *United States v. Milne,* 498 F.2d 329 (5th Cir. 1974), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975). The court here admonished the jury before the arguments that the attorney's statements were not to be considered evidence. Whatever prejudice did result from the statement was dispelled by the instruction from the court. *United States v. Arteaga-Limones,* 529 F.2d 1183, 1190 (5th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976).

The judgments appealed from are

AFFIRMED.

RONEY, Circuit Judge, concurring:

I concur in Judge Clark's opinion. On the argument that the court erred in refusing to allow a change of plea one day after a court-imposed deadline, I am concerned that we have to rely on, as precedent, *United States v. Parkerson,* 529 F.2d 1031 (5th Cir. 1976). *Parkerson* was a Local Rule 21 decision, affirming without opinion, thus holding an opinion to be of no precedential value.[1] At the same time we have been unable to find any case in this Circuit which establishes a precedent on the issue as to the propriety of a court-imposed deadline for accepting a change of plea. It seems to me the point is important enough to require this Court to set forth its premises in an opinion, so that the bench and bar would know the reasoned law of this Circuit.

I agree, however, that *Parkerson* concludes the matter as far as this panel is concerned, and that any meaningful consideration of the argument could be given only by the Court sitting *en banc. Davis v. Estelle,* 529 F.2d 437, 441 (5th Cir. 1976), and cases there cited. *See* F.R.A.P. 35.

---

1. Rule 21 provides: "When the court determines that any one or more of the following circumstances exists and is dispositive of a matter submitted to the court for decision: (1) *that a judgment of the district court is based on findings of fact which are not clearly erroneous;* (2) that the evidence in support of a jury verdict is not insufficient; (3) that the order of an administrative agency is supported by substantial evidence on the record as a whole; (4) that no error of law appears; *and the court also determines that an opinion would have no precedential value, the judgment or order may* be affirmed or enforced without opinion. . . ." (emphasis supplied).