The PEOPLE of the State of Colorado, Petitioner,

v.

Everett W. JASPER, Respondent.

No. 99SC987.

Supreme Court of Colorado,
En Banc.

Jan. 29, 2001.

As Modified on Denial of
Rehearing Feb. 20, 2001.

Ken Salazar, Attorney General, Christine Cates Brady, Assistant Attorney General, Denver, CO, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, CO, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this appeal we hold that a trial court possesses the inherent authority to impose a plea cutoff deadline as part of its case management responsibilities provided the parties have notice of the deadline. If the parties seek to tender the plea after the deadline, then they have the burden to establish good cause to bypass the deadline. Here, they have failed to do so. The determination of good cause in this context rests with the sound discretion of the trial court.

In this case, the prosecution, the petitioner before us, reached a plea agreement with the respondent, defendant Everett Jasper, which the trial court rejected as untimely because the parties failed to tender it before the expiration of a court-imposed plea cutoff deadline. On appeal, the court of appeals in *People v. Jasper*, 984 P.2d 1185, 1187 (Colo. App.1999) reversed, holding that the trial court acted arbitrarily because it failed to consider the terms of the proposal before rejecting the plea bargain. In addition, the court of appeals held that the trial court acted arbitrarily by rejecting the plea agreement solely because the parties failed to meet the trial court's plea cutoff deadline. *Id.*

The court of appeals remanded the case to the trial court to determine the terms of the plea bargain, to consider the propriety of the agreement, and to state its reasons for rejecting or accepting the agreement. *Id.* The court of appeals directed that if the trial court accepts the agreement, then that court is to vacate the defendant's convictions and resentence the defendant. *Id.* If the trial court rejects the plea, then it is to return the case to the court of appeals for resolution of issues raised but not determined on appeal. *Id.*

We perceive the issue in this case more narrowly than did the court of appeals and consequently address only the question of whether a court may exercise its procedural authority to reject a plea agreement when the parties miss a plea cutoff deadline. We hold that a trial court may impose and enforce a plea cutoff deadline as part of its case

management authority. In order to prevent arbitrary rejection of untimely pleas, however, a trial court must provide adequate notice to the parties of the plea cutoff deadline and must permit an exception to the deadline for good cause. The parties, not the court, bear the burden of establishing an exception to the plea cutoff deadline. Unless the parties specifically inform the court of facts constituting good cause, the parties waive any objection to the court's enforcement of the deadline.

Applying these legal principles to this case, we hold that the trial court acted within its discretion by enforcing its plea cutoff deadline. Although we disapprove of the way that the trial court summarily cut short the prosecutor when he attempted to explain the proposed plea bargain, our review of the entire trial record convinces us to hold that the parties had notice and failed to state good cause to tender an untimely plea agreement. Hence, we conclude that the court did not act arbitrarily by enforcing the plea cutoff deadline. We reverse the judgment of the court of appeals and remand this case to that court to address other issues raised but not resolved on appeal.

## II. FACTS AND PROCEDURAL HISTORY

The defendant appeals his jury convictions for the crimes of first degree assault, felony criminal mischief, vehicular eluding, felony menacing, and driving after judgment prohibited.[1] On the Friday before the Monday when the defendant's trial was to begin, the court held a pretrial hearing in part to determine whether the case was ready for trial or if the parties had reached a plea agreement. Neither party informed the court of a plea agreement.

On the morning of trial, after jury selection, the prosecutor stated that the parties had agreed to a plea bargain. The court rejected the plea agreement without considering its terms, asserting that, by failing to tender the bargain by the previous Friday, the parties had missed the plea cutoff dead-

line. The trial judge stated that the only agreement he would accept was a complete dismissal of all charges or pleas of guilty to all charges:

> *Prosecution:* Your honor, if we—it's come to my attention, and I understand how Your Honor is going to be probably somewhat upset at this point—prior to picking the jury, we had discussed plea negotiations—
>
> *The Court:* Call your first witness.
>
> *Prosecution:* And now he's indicated he wants to plead.
>
> *The Court:* No. There won't be any pleas. What I will take right now is dismissal by the People or guilty to all charges. Only two things. Proceed with your first witness. That's why we have pretrial hearings on Friday, to make certain that this doesn't happen.

The case then proceeded to trial, resulting in convictions. At sentencing, the defendant recounted the negotiation history. He said the prosecutor made several offers before the plea cutoff deadline. One of these included reducing the First Degree Assault charge to Second Degree Assault. The defendant stated he rejected these offers because he "would not plead to a charge that [he] did not commit, nor intend to commit." He also said these offers did not include drug rehabilitation treatment, which the defendant stated was part of early plea negotiations upon which he relied to waive his preliminary hearing. The defendant said that, after jury selection, the prosecutor offered, for the first time, to dismiss the assault charge completely. Although drug rehabilitation was not mentioned by the prosecutor then, the defendant agreed to the offer because he "felt that it was [in his] best interests." The precise terms of the proposed plea bargain are unclear, as is the sequence of negotiations. However, neither the prosecutor nor the defense counsel corrected or clarified the defendant's statements.

On appeal, the court of appeals addressed our rule of criminal procedure and statute

---

1. See § 18-3-202, 6 C.R.S. (2000) (assault in the first degree); § 18-4-501 (criminal mischief); § 18-9-116.5 (vehicular eluding); § 18-3-206 (felony menacing); § 42-2-206 (driving after judgment prohibited).

which mandate that the court exercise independent judgment when deciding to accept or to reject a plea bargain. *See* Crim. P. 11(f)(5); § 16–7–302(3), 6 C.R.S. (2000). The court reasoned that exercising independent judgment cannot be done arbitrarily, but rather that a court's discretion when making this determination is subject to limitations. *Jasper,* 984 P.2d at 1186–87. Relying in part on federal circuit court cases, see *United States v. Robertson,* 45 F.3d 1423 (10th Cir. 1995);[2] *United States v. Moore,* 916 F.2d 1131 (6th Cir.1990),[3] the court of appeals implicitly held that failure of the trial court to state the reasons for rejecting a plea agreement constituted an arbitrary rejection of the plea. Such an action failed to demonstrate that the court exercised independent judgment and thus constituted an abuse of discretion. *Jasper,* 984 P.2d at 1186–87. Hence, the court concluded that by rejecting the bargain of the parties without considering the terms of the agreement, the trial court acted arbitrarily and abused its discretion. *Id.* at 1187.

Additionally, the court of appeals ruled that the trial court's sole reason for rejecting the plea bargain, that it was presented on the day of trial, was insufficient to justify a rejection of the plea agreement. *Id.* Again relying on *Robertson,* the court found that "[w]hile a trial court has considerable authority in managing its docket, scheduling concerns, even though of great importance to busy trial judges, are not sufficient by themselves to justify a rejection of a plea bargain." *Id.*

The court of appeals remanded the case to the trial court to determine the precise terms of the proposed agreement, consider whether to accept the agreement, and to state its reasons for rejecting or accepting the decision on the record. *Id.* The court of appeals instructed that, if the trial court accepts the

plea agreement, then that court should vacate the defendant's conviction and sentence. *Id.* On the other hand, if the trial court rejects the proposed plan, then the court must return the case to the court of appeals for consideration of other issues not yet resolved on appeal. *Id.*

We granted certiorari to consider whether it is within the sound discretion of a trial court to reject a plea agreement based on a plea cutoff date and under what circumstances the court should grant an exception to a plea deadline.[4]

### III. ANALYSIS
#### A.

As a threshold matter we note that we perceive the issue in this case more narrowly than did the court of appeals. In its decision, that court concluded that a trial court may not arbitrarily reject a plea agreement. Although we agree that a court may not reject a plea arbitrarily, we distinguish between a court's discretion to reject a plea agreement on the merits of the bargain and the court's discretion to reject a plea agreement because the parties failed to comply with a court-imposed plea cutoff date. We conclude that this case presents only the procedural issue of the authority of the trial court to impose plea deadlines in criminal cases, and what limitations exist on this authority.

We begin our review by examining the court of appeals' holding that a trial court abuses its discretion by rejecting a plea agreement solely for failure to tender it before a plea cutoff deadline.

#### B.

Plea bargains in criminal law are an accepted part of our jurisprudence and are specifically sanctioned by statute, court

---

2. "[C]ourts must set forth, on the record, the prosecution's reasons for framing the bargain and the court's justification for rejecting it." *Robertson,* 45 F.3d at 1438.

3. "[A] defendant is entitled to plead guilty unless the district court can articulate a sound reason for rejecting the plea." *Moore,* 916 F.2d at 1135–36 (quoting *United States v. Delegal,* 678 F.2d 47, 50 (7th Cir.1982)).

4. The precise issue on which we granted certiorari is as follows:

"May the trial court exercise its discretion to reject a plea agreement on procedural grounds when the parties miss the trial court's routine deadline for offering a proposed plea agreement."

rule and case law. "Where it appears that the effective administration of criminal justice will thereby be served, the district attorney may engage in plea discussions for the purpose of reaching a plea agreement." § 16–7–301(1); Crim. P. 11(f)(1). " '[P]lea bargaining' is an essential component of the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Trial courts, however, possess discretion to accept or to reject a plea agreement because "[t]here is no absolute right to have a guilty plea accepted." *Santobello*, 404 U.S. at 262, 92 S.Ct. 495; *see also Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (concluding that a plea bargain, until a court accepts it, is without any constitutional significance); *People v. Birdsong*, 937 P.2d 877, 880 (Colo.App.1996), *rev'd on other grounds*, 958 P.2d 1124 (Colo. 1998). Our rules and statutes require that "[t]he judge in every case should exercise an independent judgement in deciding whether to grant charge and sentence concessions." § 16–7–302(3); Crim. P. 11(f)(5). If, when it rejects a proposed plea bargain, a trial court acts within its sound discretion, then a court fulfills the mandate of independent judgment under Rule 11 and section 16–7–302. *Cf. Santobello*, 404 U.S. at 262, 92 S.Ct. 495 ("A court may reject a plea in exercise of sound judicial discretion. . . ."); *Moore*, 916 F.2d at 1136 ("[T]he Supreme Court did not intend to allow district courts to reject pleas on an arbitrary basis."); *Delegal*, 678 F.2d at 50 (same).

However, as the court of appeals points out in this case, neither the rule nor our case law articulates the contours of what constitutes the exercise of either sound discretion or independent judgment in this area. *Jasper*, 984 P.2d at 1186. Thus, to determine whether rejection of a plea bargain solely because the bargain is tendered after the plea cutoff deadline may constitute the exercise of independent judgment, or is merely an arbitrary action, we review analogous rules of criminal procedure and consider case law from other jurisdictions as well as other authorities.

Although our rules do not expressly provide that a court may exercise its discretion by enforcing a plea cutoff deadline, our rules vest trial courts with similar authority to impose and enforce pretrial deadlines upon the parties in the following similar circumstances: Crim. P. 16(V)(b)(1) instructs the court to set a deadline for the defendant to disclose statements of experts and the nature of his defense to the prosecution; Crim. P. 16(V)(b)(3) allows the court to alter discovery time limits if either party shows good cause to do so; and Crim. P. 16(IV)(b)(1) permits a trial court to set a time for an omnibus hearing.

Recently, we acknowledged the trial court's responsibility to manage criminal cases, which "includes the setting of reasonable controls on attorneys trying the case." *People v. Berreth*, 13 P.3d 1214, 1218 (Colo. 2000) (concluding that docket and administrative concerns are within the control of a trial judge). The American Bar Association (ABA) also advocates that the court, and not the attorneys, set the schedule for cases because "only the court is in a position to provide orderly and impartial direction to the movement" of cases. ABA, *The Improvement of the Administration of Justice* 37 (6th ed.1981). Thus, we conclude that the setting of deadlines for pretrial matters constitutes an integral part of a trial court's case management authority.

Case management by the trial court promotes policies of judicial efficiency and economy. We must interpret our rules of criminal procedure "to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Crim. P. 2. We have stated that "seasonal disposition of a case by plea agreement results in more effective use of court time and cuts down on the inconvenience and expense occasioned by last-minute dispositions after a jury panel has been assembled and witnesses have been subpoenaed." *Barela v. People*, 826 P.2d 1249, 1253 (Colo.1992). The need to provide for efficient and sound judicial administrative practices, dictated by both our rules of procedure and case law, compels a construction of Rule 11 that permits the use of timely plea bargains which in turn support the efficient administration of justice.

Other jurisdictions, such as Michigan, New Jersey, and California, conclude that plea cutoff deadlines are an effective means of reducing confusion, delay and expense. *See People v. Grove*, 455 Mich. 439, 566 N.W.2d 547, 558 (1997) (agreeing with the court of appeals that the use of a plea cutoff date "enhanced [the court's] docket control, eliminated unjustifiable expense and delay, and was, therefore, proper"); *People v. Brimage*, 271 N.J.Super. 369, 638 A.2d 904, 907 (App. Div.1994) ("When fairly applied, plea cut-off is highly effective and is probably the key to the extraordinary efficiency found in several [New Jersey] counties."); *People v. Cobb*, 139 Cal.App.3d 578, 188 Cal.Rptr. 712, 713 (1983) (concluding plea cutoff deadlines reduce "the confusion, hardship and inconvenience inherent in calling calendars").

The Eleventh Circuit also concludes that "the prerogative of prosecutors and defendants to negotiate guilty pleas is 'outweighed by judicial discretion to control the scheduling of trial procedures in ongoing prosecutions, plus the broad interests of docket control and effective utilization of jurors and witnesses.'" *United States v. Gamboa*, 166 F.3d 1327, 1331 (11th Cir.1999) (quoting *United States v. Ellis*, 547 F.2d 863, 868 (5th Cir.1977)); *see also Cobb*, 188 Cal.Rptr. at 716 ("The purpose of improving calendar management justifies the setting of deadlines beyond which no conditional plea may be taken.").

Empirical research further supports the notion that plea cutoff deadlines assist the processing of cases more quickly, which in turn results in the efficient administration of justice. *See* Ernest C. Friesen et al., *Justice in Felony Courts: A Prescription to Control Delay: A Report on a Study of Delay in Metropolitan Courts During 1978–1979* 32 (advocating for courts to enforce plea cutoff deadlines to promote meaningful plea discussions); David C. Steelman, *Caseflow Management: The Heart of Court Management in the New Millennium* 49–50 (2000) (determining that it is in the court's interest to provide for meaningful plea discussions by enforcing plea cutoff dates); Mary Lee Luskin and Robert C. Luskin, *Criminology: Why So Fast, Why So Slow?: Explaining Case Processing Time*, 77 J.Crim. L. & Criminology 190, 197, 209 (1986) (finding in their studies that case management techniques, which included setting plea cutoff deadlines, dramatically cut case processing time).

In contrast to these authorities, the court of appeals concluded that "[w]hile a trial court has considerable authority in managing its docket," Rule 11's requirement that courts exercise independent judgment does not permit courts to reject plea agreements for "scheduling concerns." *Jasper*, 984 P.2d at 1187. The court relied on language in *Robertson* that "scheduling concerns alone are not of sufficient importance" to justify the rejection of a plea agreement. *Robertson*, 45 F.3d at 1439. We disagree that the "scheduling concerns" that the Tenth Circuit found objectionable are analogous to a trial court's imposition of a plea cutoff deadline and read *Robertson* differently than did the court of appeals.

In *Robertson* the Tenth Circuit reasoned that the parties tendered their plea bargain in a timely fashion in compliance with the plea deadline set in Rule 40.1(H) of the Local Rules of Practice for the United States District Court for the District of Colorado (requiring that the parties notify the court of a plea agreement in writing "no later than ten days before the Monday of the week set for the trial"). *Id.* at 1435–36. The Tenth Circuit's conclusion that scheduling concerns alone do not justify rejecting a plea cutoff date referred only to the trial court's concern that it would be unable to schedule another trial at so late a date, even when the tendered plea complied with the time requirements of Local Rule 40.1(H). *Id.* at 1438–39. Hence, the *Robertson* court's conclusions do not represent persuasive authority for us to hold that a trial court lacks authority to impose and enforce pretrial plea bargain cutoff deadlines.

■ In sum, a number of factors persuade us that a trial court's case management authority includes the ability to reject proposed plea bargains tendered after plea cutoff deadlines. A defendant does not possess an absolute right to plead guilty. Our rules of procedure vest trial courts with significant similar control over pretrial matters. We

must construe our rules of criminal procedure to promote efficient judicial administration. The use of plea cutoff deadlines provides the trial court with a management tool that increases the efficient operation of the courts for the benefit of all citizens. Thus, we disagree with the court of appeals that a trial court acting pursuant to its case management authority acts arbitrarily by enforcing a plea cutoff date. We hold that it is not an abuse of discretion for the trial court to reject a plea bargain solely for failure to tender it before a court-imposed plea deadline.

### C.

■ Having determined that a trial court may enforce plea cutoff deadlines in criminal cases, we turn to the issue of whether a court may reject a plea arbitrarily and agree generally with the court of appeals' implicit conclusion that there are limits on a trial court's ability to enforce a plea cutoff date. *Jasper,* 984 P.2d at 1187. Rule 11's mandate that the trial court exercise independent judgment, as well as fairness and the sound administration of justice, limit to some degree the discretion that a trial court may exercise when it acts to reject an untimely-tendered plea bargain.

One such limitation on the trial court's discretion to enforce a plea deadline is the requirement that the parties must have adequate notice of the deadline. The Sixth Circuit concluded in *United States v. Moore* that the Supreme Court did not intend for courts to reject pleas on an arbitrary basis and, because the record was unclear, remanded the case to the trial court to resolve whether a plea deadline had in fact been set by the district court. *Moore,* 916 F.2d at 1136 n. 11. Reaching a different result but using the same rationale, the Michigan Supreme Court held that where "the parties had ample notice" of a plea cutoff date, there exists no concern that the court arbitrarily rejected the plea agreement. *Grove,* 566 N.W.2d at 559 n. 31.

■ We agree with the reasoning of both the *Moore* and *Grove* courts that a plea bargain cutoff deadline may be enforced only where the parties have actual notice of the trial court's practice. Notice to the parties protects against the arbitrary rejection of a proposed plea bargain and promotes fairness. Hence we hold that a trial court must provide adequate notice to the parties of its plea bargain cutoff date in order to enforce the rule.[5]

A second limitation on the trial court's discretion to reject an untimely plea bargain is the principle that the court consider the merits of the actual proposal if there exists a good cause explanation why the parties failed to tender it in a timely manner. Some jurisdictions, including the federal courts, have promulgated rules of criminal procedure that embody this concept and permit the enforcement of plea cutoff deadlines but also provide for an exception to the deadline for good cause. *See, e.g.,* Fed.R.Crim.P. 11(e)(5)("Except for good cause shown, notification to the court of the evidence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court."); Del.Super. Ct.Crim. R. 11(e)(5); N.D.R.Crim. P. 11(d)(5).

■ We are persuaded by these cited authorities and now hold that if a trial court imposes a plea cutoff deadline, then the court must permit an exception to this rule for good cause. The exception for good cause, like adequate notice, furthers goals of sound judicial administration and protects against arbitrary rejection of plea bargains.

■ Although we do not wish to establish detailed guidelines for what constitutes good cause because this subject is best left to the sound discretion of the trial court, generally good cause must be something more than a mere change of mind or a renegotiation by the parties. *See People v. Jacobson,* 419 N.W.2d 899, 903 (N.D.1988) (concluding that

---

5. We note that the better trial court practice is to provide notice of the plea cutoff date in writing. *See generally* C.R.C.P. 16(a),(b) (requiring court to approve written case management order setting dates for civil pretrial matters in order to "establish a uniform, court-supervised procedure" of case management); Fed.R.Crim.P. 17.1 (permitting court to hold pretrial conferences to decide matters that will promote a fair and expeditious trial, and requiring court to prepare and file a memorandum of matters agreed upon at such conferences).

an attempt to renegotiate a second plea on the morning of trial was not good cause shown for failing to meet the court's plea deadline).[6]

■ Good cause exists in exceptional circumstances, such as when unforeseen events occur after the plea cutoff deadline that change the positions of the parties. *See Cobb,* 188 Cal.Rptr. at 716 (concluding that courts may make an exception to a plea cutoff deadline under exceptional circumstances); National Advisory Commission on Criminal Justice Standards and Goals, *Courts* Standard 3.4 (acknowledging that late tendered pleas may be accepted in exceptional circumstances, although sparingly); *see also* ABA, *Standards of Judicial Administration Volume II: Standards Relating to Trial Courts* 95–96 (1992)(suggesting that good cause be the only basis for continuing a trial or hearing, which is when "the underlying eventuality is unforeseen, is not due to lack of preparation, is relevant, is brought to the court's attention in a timely manner, and does not prejudice the adversary").

■ Good cause in this context should be somewhat of an elastic concept, existing in some circumstances even though no unforeseen events occur after the deadline. For example, in *State v. Bowen,* 269 N.J.Super. 203, 634 A.2d 1371 (App.Div.1993), the impact of testimony elicited at an evidentiary hearing held the day before trial and after a plea cutoff date, which brought about a plea agreement, was held to constitute good cause to bypass the court's deadline. *See id.* at 1376–77. The defendant suffered from mental retardation and, as defense counsel explained, was unable to comprehend the severity of the evidence against him until he heard witnesses testify at the evidentiary hearing. *Id.* at 1375. It was not until after this hearing that the defendant was able to understand in a meaningful way the strength of the prosecutor's case and the advantages of the proposed plea agreement. *Id.* at 1377.

6. The Fifth Circuit has also found that overworked or understaffed counsel is not good cause for making an exception to a plea cutoff. *Ellis,* 547 F.2d at 868 (discussing *United States v. Parkerson,* 529 F.2d 1031 (5th Cir.1976)(no published opinion)).

■ While the court's authority to reject an untimely plea bargain proposal is tempered by both adequate notice and the exception for good cause, the parties bear the burden of establishing that a good cause exception exists. The parties, as the proponents of a plea agreement, are in the best position to inform the court of facts and circumstances that constitute good cause, and thus bear this burden to explain why they missed the deadline. *See Jacobson,* 419 N.W.2d at 903 (concluding that judge did not abuse discretion in upholding strict plea deadline where defendant failed to show good cause for missing the deadline). If the parties fail to tell the court of specific circumstances that justify the untimely plea, any objection to the enforcement of the deadline is waived.

To summarize, we hold that the trial court possesses inherent authority to impose a plea cutoff deadline pursuant to its case management authority. In exercising such authority, the trial court conforms to the requirements of the rule and the statute that a court exercise independent judgment when rejecting a proposed plea. When the parties offer a plea after a court-imposed plea cutoff deadline, the court should consider reasons given by the parties to make an exception to the deadline. The determination of good cause rests with the sound discretion of the court. If the court finds an insufficient basis to justify an exception, then the court may reject the agreement based on a plea cutoff date.

## IV. APPLICATION

■ Having determined that a trial court acts within its discretion by rejecting an untimely plea agreement provided the parties have notice of the deadline and provided that no good cause reason exists to explain why the parties failed to meet the deadline, we consider whether the court of appeals properly remanded this case to the trial court to

We further note that where the defendant decides to plead guilty to the offenses as charged, the court should also grant an exception to the plea cutoff deadline.

consider the terms of the agreement and state its reasons for rejecting or accepting the agreement. Although we disapprove of the summary manner in which the trial court cut short the prosecutor when he attempted to explain the proposed plea bargain, our review of the entire trial record indicates that a remand is unnecessary. Thus, we reverse.

Applying the principles of law discussed, we hold that the trial court's rejection of the parties' tendered plea agreement for the sole reason that the parties failed to tender it by the Friday before trial (which was the court-imposed plea cutoff date) was consistent with its case management authority and our rules of procedure and statutes which require the trial court to exercise independent judgment in these circumstances. Hence, we conclude that the court's rejection of the plea bargain solely because the parties missed the court's deadline did not constitute an abuse of discretion.

■■■ Next we address whether the court acted arbitrarily when it rejected the proposed plea bargain by failing to give the parties notice of the deadline or by failing to grant an exception to the deadline for good cause.

With respect to the notice requirement, our review of the record leads us to conclude that the parties had notice of the plea cutoff deadline. Although the record does not reflect that the court gave the parties written notice of a plea cutoff deadline, or specific oral notice, we infer from the prosecutor's statement, "I understand how Your Honor is going to be probably somewhat upset at this point," that the prosecutor understood that the proposed plea was untimely. We also infer that defense counsel was aware of the deadline because she did not argue lack of notice to the trial court. Hence, we conclude that the trial court's rejection of the bargain was not arbitrary for failure to provide the

parties with adequate notice of the court's deadline.

■■■ We thus turn to whether a good cause explanation for bypassing the deadline exists. Initially, we disapprove of the way in which the trial court summarily cut short the prosecutor when he tried to explain the proposed plea bargain to the court on the morning of trial. However, at the time the court rejected the proposed plea agreement, the parties said nothing on the record to indicate there existed good cause to tender the plea after the cutoff deadline, nor did they say anything to indicate good cause later during the trial or at the sentencing hearing. Thus, we conclude the parties had ample opportunities to establish good cause and failed to do so.

■■■ Further, we note that if the defendant's statements at sentencing constitute an accurate and complete statement of negotiations, then this explanation does not appear to establish a good cause reason why the parties failed to meet the plea cutoff deadline. Rather, the defendant's statements indicate that he accepted the plea agreement tendered on the day of trial only because the prosecutor agreed to dismiss the assault charge after the plea cutoff deadline. The plea agreement appears to be a result of a mere renegotiation or a change of mind by the parties which, as discussed in our analysis, does not ordinarily establish good cause.

■■■ Lastly, we address one final matter. The court of appeals held that a trial court must state its reasons for rejecting a proposed plea agreement. We expressly disapprove of that court's holding as it applies in the context of this case. We note that most of the authorities relied upon by the court of appeals to support this conclusion concern a trial court's ultimate decision to accept or reject a plea bargain on its merits. *See Jasper,* 984 P.2d at 1186–87.[7] This case

---

7. *See United States v. Maddox,* 48 F.3d 555, 557–560 (D.C.Cir.1995) (reviewing trial court's rejection of, presumably, a procedurally proper plea agreement); *Robertson,* 45 F.3d at 1438 (reviewing trial court's decision to reject a plea agreement which conformed to the district rule plea cutoff deadline but violated the trial court's internal policies); *United States v. Miller,* 722 F.2d

562, 566 (9th Cir.1983) (same as *Maddox*); *United States v. Ammidown,* 497 F.2d 615, 618, 621–22 (D.C.Cir.1973) (reviewing trial court's discretion to reject a plea agreement on its merits).

The court also cited *Moore,* which addresses the limitations on a court's discretion to reject an untimely plea agreement and concludes that a

addresses only the court's discretion to reject a plea agreement, separately from the merits, because the parties tendered it in an untimely fashion. Thus, we find most of the authority cited by the court of appeals inapposite[8] and further conclude that if a trial court rejects a plea for failure to conform to a plea cutoff deadline, then the court need not necessarily consider the terms of the plea agreement proffered by the parties.[9]

Summarizing, we hold that the court exercised its independent judgment in a non-arbitrary manner by rejecting the parties' proposed plea agreement because it was untimely, the parties had adequate notice of the court-imposed deadline, and the parties failed to show good cause for failing to meet the deadline.

## V. CONCLUSION

We reverse the judgment of the court of appeals and remand this case to that court to address other issues raised but not resolved on appeal.

court must state its reasons for rejecting a plea agreement on the record. *Moore,* 916 F.2d at 1136. However, we decline to accept the reasoning in *Moore* because, like the court of appeals in *Jasper,* the Sixth Circuit relied on cases that concern a court's discretion to reject an agreement on the merits rather than for a procedural fault. *See id.* (citing *Miller, Ammidown,* and *Delegal,* 678 F.2d at 50–52 (concerning a court's discretion to reject a plea after considering the substantive terms of the agreement)). We further note that the court in *Moore* construed the meaning of Rule 11 of the Federal Rules of Criminal Procedure, which, unlike our Colorado Rules, sets forth very detailed procedures for rejecting a plea agreement and requires the court to state much of the plea rejection process on the record. *See* Fed.R.Crim.P. 11(e)(2) (requiring that once the parties reach a plea agreement, the court must ensure the disclosure of the terms of the agreement on the record); Fed.R.Crim.P. 11(e)(4) (requiring that

when a court rejects a plea agreement, it must inform the parties of this fact on the record).

8. Many of the cases cited by the court of appeals address the separation of powers concerns that arise when a court reviews the merits of a plea agreement. Before rejecting or approving the terms of a plea agreement the court must be mindful of the separation of powers issues—a prosecutor's discretion to make charging decisions and judicial authority to make sentencing decisions. *See Robertson,* 45 F.3d at 1436–38; *Miller,* 722 F.2d at 565–566.

9. Although we expressly disapprove of the court of appeals holding that the trial court must state its reasons for rejecting a plea bargain, in the context of this case, we express no opinion whether a trial court must state on the record its reasons for rejecting a proposed plea on the merits and leave this issue for resolution in the future.