THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellees v. MELVIN HENDERSON, Defendant-Appellant.

Third District    Nos. 3—01—0120, 3—01—0745 cons.

Opinion filed September 20, 2002.

LYTTON, P.J., specially concurring.
HOLDRIDGE, J., dissenting.

Kerry J. Bryson (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Richard T. Leonard (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McDADE delivered the opinion of the court:

Defendant, Melvin Henderson, was convicted of unlawful possession of a controlled substance on April 20, 2000, and was sentenced to five years' imprisonment. He filed a *pro se* postconviction petition, which was summarily dismissed on January 11, 2001. Defendant appeals from his final judgment of conviction and the dismissal of his postconviction petition. We reverse and remand.

## FACTS

On November 26, 1999, defendant was charged by information with one count of unlawful possession of a controlled substance with

intent to deliver. Subsequently, the charge was amended to unlawful possession of a controlled substance, a Class IV felony. The indictment specifically alleged that defendant was in possession of less than 15 grams of cocaine.

The evidence at trial showed that crack cocaine was found in the defendant's apartment, to which he had sole access. The defendant had indicated to the police officer that there were crumbs of cocaine on a table and had directed the officer to the exact location where the crack cocaine was found.

Defendant appeared on January 18, 2000, and he pled not guilty. The judge set March 16, 2000, as the date for defendant to enter a guilty plea. On that date, however, defendant persisted in his not guilty plea and demanded a jury trial. The judge then set a guilty plea deadline of April 13, 2000.

On April 13, defendant appeared with counsel. He indicated that he had not accepted the plea offer from the State because he hoped to negotiate a lesser sentence. The trial judge gave the defendant until the next day to think about the latest plea offer, which had been on the table since March. On April 14, defendant again indicated that he did not wish to accept the State's plea offer.

The jury trial commenced on April 19, 2000. Prior to jury selection, the judge had a hearing on defendant's motion *in limine* with regard to his prior convictions and reserved ruling on the request for a "mere fact" presentation of the prior convictions. At the end of the hearing, the jury was selected.

Before opening statements, defendant asked the judge why he was eligible for an extended-term sentence. Defendant attempted to plead guilty but the judge responded that although he would accept an open plea, he was not going to accept any negotiated pleas at that point because the jury had been selected, and he was ready to proceed. The judge reminded defendant that he had had until April 14 to enter a negotiated plea and, in fact, suggested that defendant could have accepted the plea even a day or two before trial commenced. It does not appear from the record that the State had ever withdrawn the plea offer and no objection was made to defendant's attempt to plead following jury selection.

The trial proceeded before the jury. At the end of the State's case, the judge ruled, with regard to the motion *in limine*, that one of defendant's prior convictions for possession of drugs with intent to deliver could be used for impeachment if defendant testified. Defendant then decided not to testify.

Defendant was found guilty of possession of the cocaine and on May 24, 2000, was sentenced to five years' imprisonment. The sentenc-

ing order was entered on June 6, 2000, and defendant filed a motion for reconsideration on July 5, 2000, which was denied. His subsequent *pro se* postconviction petition was dismissed on January 11, 2001. Defendant appeals the conviction and the dismissal of his postconviction petition.

## ANALYSIS

■ Defendant raises three issues on appeal: (1) whether the trial court abused its discretion by refusing to consider a guilty plea solely because it was tendered after the deadline and after jury selection on the morning of trial, (2) whether this matter should be remanded for a new trial where the trial court's denial of defendant's request for the use of "mere fact" method of impeachment by prior conviction was in error, and (3) whether the trial court's first-stage dismissal of defendant's postconviction petition should be reversed because the enactment of Public Act 83—942 (Public Act 83—942, eff. November 23, 1983) violates the single subject rule of the Illinois Constitution. The first issue raised is a matter within the sound discretion of the trial court and will not be reversed absent a clear abuse of the court's discretion. See *People v. Peterson*, 311 Ill. App. 3d 38, 725 N.E.2d 1 (1999). The remaining two issues have previously been addressed in other cases and rejected by this court, and we decline to revisit them.

### Refusal to Accept Guilty Plea

Defendant argues that the trial court abused its discretion by refusing to consider his guilty plea solely because he tendered it on the morning of trial after expiration of the court's deadline. He argues that it was an abuse of the trial judge's discretion to refuse the guilty plea only on timeliness grounds, without considering the merits of the negotiated agreement.

■ It is well established that the trial judge is not obligated to accept a guilty plea and that he may reject such a plea in the exercise of sound judicial discretion. *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971); *People v. Peterson*, 311 Ill. App. 3d 38, 725 N.E.2d 1 (1999). A judge will be deemed to have abused this discretion when a decision regarding whether to accept a guilty plea is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 743 N.E.2d 126 (2000).

The defendant's argument centers around whether it is an abuse of the trial court's discretion to refuse to even entertain his guilty plea solely on the basis of the expiration of a court-imposed deadline. This is a question of first impression in Illinois, and in considering the issue, we have looked at how other jurisdictions have analyzed it.

■ There are two basic lines of authority on this issue. *State v. Hager*, 630 N.W.2d 828 (Iowa 2001), provides a clear example of one line of reasoning. In that case, the court held that it was an abuse of the trial court's discretion to refuse to accept defendant's tender of a guilty plea solely on the basis of timeliness. The court reasoned that a missed deadline alone would not support a refusal to accept a guilty plea, but that there must be additional reasons. While the court did not elaborate on what the additional reasons must be, it did conclude that inflexible plea deadlines themselves eliminate the court's exercise of discretion.

The refusal to consider the plea in *Hager* was premised on the fact that it was tendered on the day of trial and the jury pool was already present. In reaching its decision, the *Hager* court also noted that "[a]t times, the very presence of a jury on the morning of trial can engender a desire from the defendant to plead guilty that cannot be replicated at any prior time in the process. Thus, the jury's function to help resolve cases can be performed at times by its mere presence on the morning of trial." *Hager*, 630 N.W.2d at 836.

The other line of authority is clearly explained in *People v. Jasper*, 17 P.3d 807 (Colo. 2001). In that case, the court held that plea bargain cutoff deadlines may be enforced where the parties have actual notice of the court's practice and where the court permits exceptions for good cause. The *Jasper* court reasoned that the plea deadlines are part of the court's management authority and recognized that there is no absolute right to have a guilty plea accepted. The court stated that "the setting of deadlines for pretrial matters constitutes an integral part of the trial court's case management authority." *Jasper*, 17 P.3d at 812.

After careful consideration of both lines of cases, we find the *Hager* court's reasoning more persuasive.

We are, however, not sure the refusal in this case would have passed the limitations in *Jasper* either. We have found no evidence in the record that exceptions to deadlines are permitted for good cause. We also note that the court's "policy" is unclear inasmuch as it was willing to deviate for an open plea, but not for one that was negotiated.

Certainly, the courts need to be able to manage their dockets to maximize access and minimize costs. However, rejecting a guilty plea solely because it was not tendered before the court-imposed deadline does not seem to be in the best interests of justice or of public policy concerning resolution of cases.

The only reason for strictly enforcing the deadline would be some attempt to manage the docket and conserve judicial resources.

However, as noted by the *Hager* court, "efficiency must always be compatible with fairness, and fairness must consider the fundamental principles which drive our system of justice and the rights and liberties of each individual. There are many procedures courts could employ that would quickly eliminate backlogs and enable our legal system to run with the efficiency of an assembly line, but they are not implemented because they would offend the principles fundamental to our system of justice." *Hager*, 630 N.W.2d at 835.

In addition, there is an interest in promoting settlement of cases. Plea negotiations lead to the prompt and final disposition of many criminal cases. In addition, they give the State leverage in prosecuting crimes. Strictly enforcing court-imposed deadlines goes against these interests.

■ In this case, although the defendant had ample time to evaluate and accept the State's plea and he only delayed his decision hoping to negotiate a lesser sentence, the plea should have been considered on its merits. According to the record, the only reason given for the trial judge's strict enforcement of the deadline was that the attempt to tender the plea was made after the jury had been selected.

As we have previously stated, however, the judge indicated that he would have accepted an open plea at that time. We cannot discern, and the State has not presented, any difference in added costs or taxing of resources that would justify addressing an open plea and refusing to even consider one that has been fully negotiated. Therefore, we find that the judge abused his discretion in refusing to even consider the negotiated plea solely on timeliness grounds.

We emphasize in stating our decision that we are not holding that defendant has a right to have a guilty plea accepted, even when its terms are completely agreeable to defendant and to the State. Rather, we are holding that it is an abuse of discretion for the court to refuse to exercise discretion in determining whether the plea should be accepted or rejected on its merits simply because an arbitrary deadline has passed.

The remaining two issues have previously been addressed by this court. We see no reason to revisit them at this time, and we decline to do so.

## CONCLUSION

Based on the foregoing, the refusal of the court to consider the defendant's plea based on timeliness alone was an abuse of discretion and is reversed. This matter is remanded to the trial court for further proceedings.

PRESIDING JUSTICE LYTTON, specially concurring:

I specially concur with the majority because the trial court's actions indicate that it did *not* exercise its discretion in accepting or refusing the plea. The dissent claims that we should not disturb the trial court's exercise of its discretion, but this claim assumes that the court had exercised its discretion in the first place. When a judge draws a strict time line after which he will not accept a guilty plea, it is an arbitrary, not a discretionary, act. As the *Hager* court said, "a fixed plea deadline is the very antithesis of discretionary decision making." *State v. Hager*, 630 N.W.2d 828, 836 (Iowa 2001). If the trial judge had listened to the terms of the plea and refused it on the merits, he would have been exercising his discretion. Because the court refused to hear the plea, we owe it no deference on this issue.

JUSTICE HOLDRIDGE, dissenting:

We cannot reverse the trial judge's decision unless he abused his discretion. *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971); *People v. Peterson*, 311 Ill. App. 3d 38 (1999). According to our supreme court, "[this] standard has been recognized as 'the most deferential standard of review available with the exception of no review at all.' " *People v. Coleman*, 183 Ill. 2d 366, 387 (1998), quoting M. Davis, *A Basic Guide to Standards of Judicial Review*, 33 S.D. L. Rev. 469, 480 (1988). An abuse of discretion occurs only if the judge's decision is arbitrary, fanciful, or no reasonable person would agree with it. See *People v. Hall*, 195 Ill. 2d 1 (2000).

Yet the majority reasons that the judge's decision is reversible because it "does not seem to be in the best interests of justice or of public policy concerning resolution of cases." 334 Ill. App. 3d at 294. Wrong standard. The majority rides the coattails of *State v. Hager*, 630 N.W.2d 828 (Iowa 2001), without specifically explaining how the judge's decision meets the true criteria for an abuse of discretion. All the majority really explains is why it disagrees with the judge's policy regarding negotiated guilty pleas. But such disagreement hardly signals an abuse of discretion. Reasonable minds can differ on this issue, as evidenced by the line of cases upholding rejections of guilty pleas on timeliness grounds. See *United States v. Gamboa*, 166 F.3d 1327 (11th Cir. 1991); *People v. Cobb*, 139 Cal. App. 3d 578, 188 Cal. Rptr. 712 (1983); *People v. Jasper*, 17 P.3d 807 (Colo. 2001); *People v. Grove*, 455 Mich. 439, 566 N.W.2d 547 (1997); *State v. Brimage*, 271 N.J. Super. 369, 638 A.2d 904 (1994). By the very definition of the standard, an abuse of discretion cannot exist under such circumstances.

Docket management is a legitimate concern resting within a trial

judge's sound discretion. In the instant case, the judge said he had a policy of not accepting negotiated pleas after commencement of trial proceedings. His policy was geared toward conserving judicial time and resources. I realize that the judge could have saved the time and expense of a trial by accepting Henderson's plea. However, Henderson caused the State to expend resources for selection of a jury that was never used. This fact distinguishes the instant case from *Hager*, where the defendant tendered his plea before jury selection. Henderson's disregard for the court's rules caused a waste that was missing in *Hager*. By taking a stand, the judge sent a message calculated to inhibit such waste in the future. He also attempted to foster respect for rules. Lack of such respect is what causes a need for guilty pleas in the first place.

These concerns explain why—in the exercise of his sound discretion—the judge decided to reject Henderson's guilty plea. The majority's assertion that the judge failed to even initiate an exercise of his discretion is conclusory at best. Also misplaced is the majority's focus on how the judge apparently would have handled an untimely open plea. Regardless of that hypothetical outcome, the judge's decision to reject Henderson's negotiated plea is simply not reversible unless it fails the abuse of discretion standard.

Although persons may disagree on the soundness of the judge's approach, how can the majority believe that no reasonable person would agree with it? How do the judge's actions satisfy the definitions of arbitrary and fanciful? The majority has not satisfactorily explained how, and I do not believe it can. I thus dissent.