72 P.3d 1277

**STATE of Arizona, Appellee,**

v.

**Carlo Victor DARELLI, Appellant.**

**No. 1 CA–CR 02–0432.**

Court of Appeals of Arizona,
Division 1, Department A.

July 22, 2003.

As Amended July 31, 2003.

Garbarino, J., filed opinion, concurring in part, and dissenting in part.

---

4. The Honorable A. Fred Newton, a judge of the Coconino County Superior Court, was authorized to participate as a judge *pro tempore* of the Arizona Court of Appeals by order of the Chief Justice of the Arizona Supreme Court. Ariz. Const. art. 6 § 31; A.R.S. § 12–145 *et seq.* (1992 & Supp.2002).

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, Phoenix and Vincent L. Rabago, Assistant Attorney General, Tucson, Attorneys for Appellee.

Sherman Jensen, Prescott, Attorney for Appellant.

## OPINION

BARKER, Judge.

¶ 1 We hold in this case that a trial judge may not effectively implement a plea cut-off date, by rejecting all potential pleas except a plea to the charges, based solely on the procedural posture of the case at issue.

### Factual and Procedural History

¶ 2 On October 25, 2001, appellant was charged with two counts of aggravated assault (Counts 1 and 2) and one count of disorderly conduct with a deadly weapon (Count 3). These charges arose out of a domestic dispute on June 14, 2001 in which appellant struck the victim, Richard C., multiple times in the face. He also threatened two other individuals with a gun and large knife.

¶ 3 On the first day of trial, while the jury was assembled and awaiting voir dire, the

prosecutor asked defense counsel whether appellant would be interested in resolving the case by pleading guilty to disorderly conduct and forfeiting his firearm. After discussing the State's proposal with appellant, defense counsel indicated that his client was receptive to the proposed offer but needed clarification on certain of the terms. Accordingly, the prosecutor suggested that although she did not have approval for the offer, she would be willing to call her supervisor for the needed clarification and approval.

¶ 4 At that point, the court became aware of the status of the negotiations even though a formal plea agreement had not been submitted. The trial judge told both counsel that, because the prospective jurors had already been summoned and assembled, he would only accept a plea to the indictment or a dismissal of all charges. Otherwise, the case would go to trial that same day. The trial judge explained:

[The Court]: We now have probably 60 or 70 people being assembled out there in the courtroom. We're going to be beginning the voir dire. It's my position, in a case like this, at this time, that one of two things can happen.

We can have—other than the jury trial, [appellant] can plead guilty to the indictment, or the State could dismiss the case. If one of those two things doesn't occur, then we're going to have the jury trial. I've informed counsel of that. *It may have foreclosed further negotiation, but that's the way I see it.*

(Emphasis added.) The trial court expressly acknowledged that his announcement would likely terminate plea negotiations.

¶ 5 Defense counsel objected to the trial judge's statement as "an intrusion into the separation of powers clause"; namely, the announced rejection by the trial judge, on procedural grounds, of any guilty plea (other than a plea of guilty to the charges) was "an intrusion into the prosecutor's role to determine whether or not to make a plea offer." As to the status of the plea negotiations, defense counsel explained:

Again, [an] initial offer had been made by e-mail yesterday with a deadline on it. I

couldn't get to [appellant] in time to meet that deadline.

This morning, in coming up, a suggestion was made; I spoke to [appellant] about it. I came back in and wanted to make sure that I understood the offer, or possible offer, correctly. And it's my understanding that [the prosecutor] was willing to call her supervisor to get approval for that suggestion. And so to the extent that the Court's view may—I appreciate and understand the Court's view, but I believe that it may go against the grain of separation of powers.

[The Court]: That's why I wanted it on the record.

¶ 6 After hearing what the trial judge would and would not accept, the prosecutor indicated that he was ready to proceed:

[Prosecutor]: Your Honor, I was just talking with [defense counsel] outside and sort of threw it out. I'd have to contact the victims and so forth to do it. I don't have any objection to proceeding with the trial today. We're ready to go.

¶ 7 To the extent that the prosecutor claimed that the parties were not seriously pursuing plea negotiations, the court believed otherwise. In its characterization of whether plea negotiations were serious or simply conjecture, the trial judge addressed this issue directly and stated:

I did want it [the status of negotiations] on the record because *I thought it had serious implications.* And I also today, looking back on it, *still look at it as a serious possibility,* and my position today is the same as it was.

. . . .

I don't know what the State's state of mind was, as far as whether it was a serious offer or not. *But I took it as though there was the serious possibility that further negotiation could take place that might result in some type of agreement.*

(Emphasis added.)

¶ 8 The trial judge also explained in more detail his position on why he terminated plea negotiations in the context of a "serious possibility" that a plea agreement could be

reached. He indicated that to save time, given the press of 60 to 70 prospective jurors that were waiting in the courtroom, he would have rejected any plea agreement that did not either admit to or dismiss all charges:

> As I expressed it to counsel and to [appellant] on the record, that in this case, at that time, under those circumstances, the only position left for the Court—certainly the parties could have entered into a written Plea Agreement. Certainly *they could have proposed it to the Court and I could not have prevented that.* But I was attempting to save time because, candidly, *the only thing that could be in that agreement that would have been acceptable to the Court at that point would be a dismissal of the charges,* that the parties were agreeing to do that, *or the defendant was pleading guilty to all of the charges in the indictment.* And I was of the opinion that neither of those possibilities were going to be in any Plea Agreement and so, therefore, that's why I expressed it the way I did.

(Emphasis added.)

¶ 9 With plea negotiations stopped, the case proceeded to trial. Appellant was convicted of aggravated assault as charged in Count 1, misdemeanor assault as a lesser-included offense to Count 2, and disorderly conduct with a deadly weapon as charged in Count 3. This appeal followed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A) (2001).

### Discussion

¶ 10 The issues are (1) whether the trial judge's interference with plea negotiations constituted error and (2) if so, can it form the basis for a new trial. The issues require us to consider whether the principles applicable to plea *agreements* apply to plea *negotiations.* We find that they do.

### 1. The Plea Negotiations.

#### A. General Principles.

¶ 11 We start with the proposition that criminal defendants have no constitutional right to a plea agreement and the State is not required to offer one. *State v. Jackson,* 170 Ariz. 89, 91, 821 P.2d 1374, 1376 (App.1991). However, plea agreements are "an essential part of the criminal process and can enhance judicial economy, protect the resources of the State, and serve the ends of justice for the defendant, the State and the victim." *Espinoza v. Martin,* 182 Ariz. 145, 147, 894 P.2d 688, 690 (1995) (quoting *State v. Superior Court (Williams),* 125 Ariz. 575, 577, 611 P.2d 928, 930 (1980) *(rejected on other grounds, Smith v. Superior Court,* 130 Ariz. 210, 212, 635 P.2d 498, 500 (1981))). When parties elect to participate in plea negotiations, Arizona Rule of Criminal Procedure 17.4 ("Rule 17.4") governs. The parties' right to negotiate a plea is expressly provided for in Rule 17.4(a): The parties *may* negotiate concerning, and reach an agreement on, any aspect of the case. If negotiations are successful, the plea agreement is reduced to writing. Rule 17.4(b). The court determines whether it is knowingly and intelligently made. Ariz. R.Crim. P. 17.2, 17.3 and 17.4(c). Then, the court determines whether to "accept or reject the tendered negotiated plea." Rule 17.4(d). Our supreme court has spoken on what type of consideration a trial judge must give in determining how to accept or reject a plea under Rule 17.4(d).

¶ 12 In *Espinoza,* the Arizona Supreme Court considered whether a policy adopted by superior court judges summarily rejecting all plea agreements containing stipulated sentences violated Rule 17.4. 182 Ariz. at 146, 894 P.2d at 689. The supreme court determined that it did violate the rule. In its analysis, the *Espinoza* court interpreted Rule 17.4 as *"guaranteeing the parties* the right to present their negotiated agreement to a judge, to have the judge consider the merits of that agreement in light of the circumstances of the case, and to have the judge exercise his or her discretion with regard to the agreement." *Id.* at 147, 894 P.2d at 690 (emphasis added). Ultimately, in ruling that "groups of judges may not implement policies to automatically reject all such plea agreements[,]" the *Espinoza* court held

that individual trial judges are required to give "individualized consideration" to plea agreements before accepting or rejecting them. *Id.* at 148, 894 P.2d at 693. The court articulated that in making its determination, the trial court must *"review the plea agreement* to see if the ends of justice and the protection of the public are being served by such agreement." *Id.* at 147, 894 P.2d at 692 (quoting *Superior Court (Williams),* 125 Ariz. at 577, 611 P.2d at 930) (emphasis added).

¶ 13 In a similar case, *Hare v. Superior Court,* 133 Ariz. 540, 541, 652 P.2d 1387, 1388 (1982), our supreme court struck down an "Automated Calendaring Project" policy adopted by the Pima County Superior Court which required that "[a]fter the first trial date, no pleas will be accepted except to the charges in the Indictment and any attached allegations." As in *Espinoza,* the *Hare* court invalidated the policy because it prohibited trial judges from exercising their discretion as defined by Rule 17.4. 133 Ariz. at 543, 652 P.2d at 1389. In its analysis, the *Hare* court recognized that the policy adopted by the Pima County Superior Court was an "improper intrusion upon the prosecutorial function in our criminal justice system . . . .[and that] our legal system vests [broad discretion] in prosecuting attorneys, particularly in the exercise of plea negotiations." 133 Ariz. at 542, 652 P.2d at 1390.

¶ 14 Thus, at least three lessons from *Espinoza, Hare* and the criminal rules are applicable and guide us here: (1) there is a right to negotiate a plea, if the parties so choose, and (2) a trial judge may not add procedural hurdles to the exercise of that right that (3) serve as a basis for the trial judge to forego exercising individualized consideration on the merits of the negotiated plea in determining whether to accept or reject it.

### B. The Issue in this Case.

¶ 15 In this case, appellant argues that the trial court abused its discretion by announcing (based solely on the fact that a jury panel was assembled and waiting) that it would only accept a plea agreement in which appellant "can plead guilty to the indictment,

or the State could dismiss the case." We agree. By making this announcement, the trial judge inappropriately read a "plea cut-off date" into Rule 17.4(a) that foreclosed plea negotiations.

¶ 16 It is clear in this case that the prosecutor and defense counsel initiated plea negotiations just one day before trial and proceeded with those negotiations up until the time that the jury panel was assembled. Given the last minute timing of the negotiations, and the fact that "60 or 70" jurors were waiting outside his courtroom, the trial judge was understandably concerned about the impact plea negotiations would have on those who were empaneled. However, the self-imposed procedural rule he implemented to address this concern runs directly counter to Rule 17.4, *Espinoza,* and *Hare.*

¶ 17 As noted in *Espinoza,* Rule 17.4 is interpreted as "guaranteeing" the parties the right to have a trial judge consider any plea agreement on the merits. 182 Ariz. at 147, 894 P.2d at 690. Once a plea agreement is made, the trial judge must give it "individualized consideration." *Id.* at 148, 894 P.2d at 691. Stepping into plea negotiations and effectively precluding any plea agreement from being reached—for procedural reasons that have nothing to do with "individualized consideration"—has the same effect as rejecting a plea agreement itself for procedural reasons not related to the merits of the agreement. The trial judge acknowledged this by indicating that he was providing input in the plea negotiation process as "I [the trial judge speaking] was attempting to save time because, candidly, the only thing that could be in that agreement that would have been acceptable to the court at that point would be a dismissal of the charges or . . . [that] the defendant [was] pleading guilty to all of the charges." He further noted that his announcement that the parties either plead to the charges or dismiss "may have foreclosed further negotiations, but that's the way I see it."

¶ 18 The decision to terminate plea bargaining lies with the prosecutor's office, not the trial judge. *State v. Morse,* 127 Ariz. 25, 32, 617 P.2d 1141, 1148 (1980) ("A deci-

sion *within a prosecutor's office* to cut off plea bargaining at the time trial begins follows logically from one of the reasons for engaging in plea bargaining: judicial economy through the avoidance of trials.") (emphasis added). The trial judge erred when he unilaterally announced a self-imposed procedural rule which effectively precluded the parties from presenting a plea agreement to him that was entitled to individualized consideration on the merits.

### C. Public Policy and the Impact on the Jury.

¶ 19 The trial judge was justifiably concerned about the impact that trial proceedings have on prospective jurors.[1] By this ruling, we do not suggest that the trial judge has lost the ability to control his or her courtroom or that trial proceedings must be delayed for plea negotiations to be completed. In fact, we reject this proposition. There is no need to delay a trial to complete plea negotiations. When faced with a last minute request for plea negotiations, a trial judge can (and most often should) proceed forward with the merits of the case by mandating that the trial proceed as scheduled. Plea negotiations may take place before or after the selection of the jury, and indeed before or after daily trial proceedings. What the trial judge cannot do is reject a plea agreement (or terminate plea negotiations) due to a self-imposed procedural rule that gives no "individualized consideration" to the merits of the plea agreement (or a prospective plea agreement being negotiated).

¶ 20 Whether there is wisdom or not in adopting a plea cut-off in either a particular county attorney's office, or the judicial branch as a whole, is not the issue before us in this case. The prosecutor is not seeking to enforce a "plea cut-off" policy or other type of prosecutorial policy that limits the time frame in which plea negotiations may take place. Neither has our supreme court

adopted a rule which allows individual trial judges (or the superior court as a whole) to reject plea agreements without considering the merits of those agreements. In fact, in *Hare*, our supreme court made it plain that the rule-making authority as to plea agreements rests with that court:

> Following the adoption of the amended 1960 state constitution, this court was given exclusive power to make rules relative to all procedural matters in any court. We have held that this rule-making power may not be supplemented or superseded by a Superior Court. We reenforced this constitutional position when we adopted Rule 36, Arizona Rules of Criminal Procedure, 17 A.R.S. (1973):
>
> > "Any court may make and amend rules governing its practice not inconsistent with these rules. No such rule shall become effective until approved in writing by the Supreme Court."
>
> This rule allows adoption of local rules of practice and procedure, but only with our approval. Since we did not approve the guidelines, they did not become effective.

133 Ariz. at 542, 652 P.2d at 1389 (citations omitted). The trial judge's determination to reject consideration of pleas depending upon the time the agreement is received rests purely on procedural grounds (not on the merits of the plea being suggested or proposed) and violates the rule-making authority vested in the Arizona Supreme Court.

¶ 21 We recognize that other jurisdictions have upheld a trial judge's decision to reject last minute plea agreements. These jurisdictions cite the interests of maintaining an efficient docket, eliminating unjustifiable expenses and delay, and promoting the effective utilization of jurors and witnesses in their reasoning. *See People v. Grove*, 455 Mich. 439, 566 N.W.2d 547, 558–60 (1997) (holding that trial court's refusal to accept defendant's plea agreement one day before trial and over one month after the plea cut-

---

1. However, as we discuss herein, there are other means of addressing that appropriate concern without violating the parties' Rule 17.4(a) rights. The trial judge's proposed solution (that the plea either be to all charges or that the case be dismissed) did not resolve this. Even if the State and the defense agreed to accept the trial judge's

statement (that either all charges be admitted or the case be dismissed), the assembled prospective jurors would be dismissed just as they would be dismissed in the event that a plea such as that being negotiated were accepted. Thus, the trial judge's approach did not do away with imposing on prospective jurors' time.

off date was proper since defendant's procedural rights were "outweighed by judicial discretion to control the scheduling of trial procedures ... plus the broad interests of docket control and effective utilization of jurors and witnesses."); *People v. Austin,* 209 Mich.App. 564, 531 N.W.2d 811, 813 (1995), *rev'd on other grounds by Grove,* 566 N.W.2d at 547 (holding that trial court's decision to reject a plea agreement offered one day before trial and after the cut-off date for pleas was appropriate because it allowed the trial court to control its docket and because it "secure[d] simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay."); *People v. Cobb,* 139 Cal.App.3d 578, 188 Cal.Rptr. 712, 713–14 (1983) ("When pleas are taken [on the first day of trial], the practice may well have a domino effect on other cases. It may leave courtrooms vacant if the calendar judge has failed to over schedule trials. Excusing unused jurors or, when expected pleas do not materialize, announcing there are insufficient judges or courtrooms for the balance of the calendar, is an unpleasant judicial task.").

¶ 22 Whether these policy reasons are the appropriate basis for a rule change is not an appropriate inquiry for this court. That is a matter for the Arizona Supreme Court to consider pursuant to its rule-making authority. *See* Ariz. R. Sup.Ct. 28. Just as it is not our domain, neither do these policy considerations allow a trial judge, absent a rule from the Arizona Supreme Court, to act contrary to the holdings of both *Espinoza* and *Hare.* Under those authorities, trial judges in Arizona are *required* to give "individualized consideration" to plea agreements presented to them. *Espinoza,* 182 Ariz. at 148, 894 P.2d at 691. If they do not, they err. *Id.* Likewise, by implementing a policy that terminates good faith plea negotiations, because a trial judge will not consider a particular anticipated plea on the merits, the rule of "individualized consideration" in *Espinoza* and *Hare* is violated. The trial court erred in doing so here.

**2.** These factors were "(1) the essential nature of the power exercised; (2) the ... degree of control [that one branch assumes] in exercising the power [of another]; (3) the ... objective [of the exercise]; [and] (4) the practical consequences of

## 2. Remedy.

¶ 23 In *State v. Donald,* 198 Ariz. 406, 410, ¶ 1, 10 P.3d 1193, 1197 (App.2000), this court considered whether the loss of a favorable plea bargain precipitated by ineffective assistance of counsel inflicted a "constitutionally significant injury upon a defendant who has received a fair trial." In holding that it did, we considered that a trial court confronted with this issue has the power to "fashion a suitable remedy which, if necessary and appropriate, may include an order to reinstate the plea offer." *Id.* at 415, ¶ 30, 10 P.3d at 1202. In the *Donald* analysis, we considered four factors[2] in determining whether a court's order requiring the prosecutor to reinstate his plea offer to defendant would violate the separation of powers clause defined in Article III of the Arizona Constitution. *Id.* at 416, ¶ 37, 10 P.3d at 1203. Ultimately, we found that upon balancing these factors, a court's reinstatement order would not "so significantly encroach on the executive department as to amount to an unconstitutional usurpation of power." *Id.* at 418, ¶ 44, 10 P.3d at 1205.

¶ 24 In this case, appellant contends that in accordance with *Donald,* the "only effective remedy ... is to return the parties to the status quo before the trial court's improper interference [with plea] negotiations ... [and that] this Court should order the State to present the proposed offer to the supervisors in the County Attorney's office and to the victims in accordance with its standard procedures." The State, however, contends that *Donald* is inapplicable and that an order by the court "reinstating the plea" would violate the separation of powers doctrine. Moreover, even if *Donald* were applicable, the State contends that the trial court must conduct a hearing to determine whether a reinstatement of the plea offer is necessary to remedy an unconstitutional deprivation of effective counsel.

the action." *Donald,* 198 Ariz. at 416, ¶ 37, 10 P.3d at 1203 (quoting *State ex rel. Woods v. Block,* 189 Ariz. 269, 276, 942 P.2d 428, 435 (1997)).

¶ 25 We agree with appellant. If we have the power, as discussed in *Donald*, to order reinstatement of a plea offer for an error on behalf of an executive officer (i.e. the prosecutor), we certainly have the power to correct the actions of a trial judge who became involved in plea negotiations. In addition, given that ineffective assistance of counsel is not at issue here, we find the State's argument that the court must conduct a hearing regarding this matter is inapplicable. Instead, it is within our discretion to order that the parties be returned to the status quo at the time the trial judge inappropriately interfered with plea negotiations. Lest there be any confusion, we will be specific in this regard.

¶ 26 We are *not* ordering that the plea suggested by the individual prosecutor be offered to the defendant. That was not the status of the negotiations at the time of the interference. The status of the negotiations was that the individual prosecutor had set forth a plea proposal that was expressly subject to the (a) approval of the individual prosecutor's supervisor and (b) comment by the victims. That is the stage to which we are returning the negotiations.[3] The State is not required to extend any plea offer. The defendant is free to accept or reject any offer that is made. The trial court, after giving "individualized consideration" on the merits of any plea agreement, may then either accept or reject the plea agreement.[4] If no plea is reached, or a plea is rejected, then this matter will proceed to trial.

### Conclusion

¶ 27 Defendant's conviction and sentences are vacated. We remand this matter to the trial court for proceedings as set forth above.

CONCURRING: ANN A. SCOTT TIMMER, Judge.

3. As we note above, *supra* at ¶ 7, the trial court rejected the State's subsequent argument that there were really no serious negotiations taking place. The trial court expressly determined that "there was the serious possibility that further negotiation could take place that might result in some type of agreement."

4. The dissent agrees that the trial judge erred in terminating plea negotiations, but contends that this error can only be asserted by special action prior to trial. The argument that an error in

GARBARINO, Judge, concurring in part, dissenting in part.

¶ 28 I respectfully dissent. In contrast to *Donald*, there was never a plea agreement on the table in this case. At most, there was the suggestion by the prosecuting attorney that she would seek the approval of her supervisor to offer a plea agreement. It was at that point that the trial court advised the parties that it would only accept a plea of guilty or a dismissal of the charges. Had the defendant believed the court to be in error by not reviewing whatever plea the parties may have submitted, he should have petitioned for special action relief. Although I agree with the majority that the trial court erred, I do not believe that we should now set aside a valid conviction so that the parties can, if they are willing to do so, enter into plea negotiations. I would affirm the conviction.

terminating plea negotiations must be addressed by special action, and not by way of appeal, was neither raised in the trial court, referenced in the briefs, nor asserted in any manner by the State on appeal. Accordingly, the issue is waived in this particular case. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) ("The failure to raise an issue either at the trial level or in briefs on appeal constitutes a waiver of the issue.").