THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACKIE A. ALLEN, Defendant-Appellant.

Fourth District   No. 4—02—0950

Opinion filed August 11, 2004.—Rehearing denied September 7, 2004.

Michael J. Pelletier and Rebecca I. Levy, both of State Appellate Defender's Office, of Chicago, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE APPLETON delivered the opinion of the court:

In March 2002, a grand jury charged defendant, Jackie A. Allen, with burglary (720 ILCS 5/19—1(a) (West 2000) (text of section effective June 1, 2001)). The day of his September 2002 trial, he sought to plead guilty to a lesser charge under a proposed plea agreement with the State. Upon ascertaining that the State had not yet drafted the charge, the trial court refused to consider the plea agreement. The trial proceeded, and the jury found defendant guilty as charged. At a joint October 2002 hearing, the court denied defendant's posttrial motion and sentenced him to 15 years' imprisonment.

Defendant appeals, contending (1) the court abused its discretion by refusing to consider the plea agreement, (2) the State committed reversible error by misstating the evidence in its closing argument, and (3) the court's 15-year sentence is excessive. Because we agree with the first contention, we reverse and remand.

## I. BACKGROUND

The grand jury's indictment alleged that on December 18, 2001,

defendant committed burglary in that he, "or one for whose conduct he was legally responsible, knowingly and without authority, entered a building of Eagle Head Enterprises [(Eagle Head)], *** at 130 E. Main, Tolono, Illinois, with the intent to commit therein a theft."

On September 11, 2002, the scheduled day of trial, the court asked defense counsel, before *voir dire*, if defendant "still persist[ed] in his plea of not guilty" to the burglary charge. Defense counsel replied: "[T]here has been an offer made by the State's Attorney. [Defendant has] decided to accept that offer if the [j]udge will entertain it." The court then asked defense counsel:

"THE COURT: Is that to the charge that I've just read to him?

[DEFENSE COUNSEL]: Yes, it is—well, no, Your Honor, it would be to a lesser charge.

THE COURT: We have jurors here at this time ready to proceed. I don't have any lesser charges here.

What is the situation at this time as far as the People are concerned, [prosecutor]?

[PROSECUTOR]: Judge, I can say that the State is ready for trial. We are prepared to proceed today.

I have previously tendered an offer to [defense counsel]. I know that she's been speaking with the [d]efendant on numerous occasions.

I don't think that the offer or the potential plea is necessarily inconsistent with the ends of justice or a bad plea or however one wants to say that.

So, [defense counsel] just asked me if he could still accept that, and I would be prepared to still offer that if the [c]ourt would accept that, but I—obviously, it's in the discretion of the [c]ourt at this point.

THE COURT: Well, what type of situation are you talking about? What is the plea? There are no other charges here, so the only charge I have is to the burglary. Has anything else been filed?

[PROSECUTOR]: [Nothing else has] been filed, [j]udge. It was believed that another charge would be filed if he would accept the plea.

THE COURT: Do you have those papers?

[PROSECUTOR]: I do not have those prepared now.

THE COURT: Then, no, we have people waiting. I am not going to wait for the State and have the jurors sit and wait for the State to prepare paperwork.

[DEFENSE COUNSEL]: Your Honor, I would just like the record to reflect that my client was in the Department of Corrections. We had several conversations through letter only. I was unable to talk to him about his case or about the plea agreement until last night.

Yesterday afternoon after court. He was not brought until Monday, approximately 1 o'clock. And because of trial call, I was unable to make it to the jail. So, I wasn't able to converse with him in person except for yesterday."

The parties selected the jury, and trial on the burglary charge began. A safe was stolen from Eagle Head on December 18, 2001. Suzan and Christina Lambert testified to seeing defendant's nephew, Timothy Burnett, pulling on the door of Eagle Head the evening of the burglary. A police officer, Everett Harper, testified to having a telephone conversation with defendant, in which defendant admitted helping Burnett plan the crime. Defendant even told Harper where he could find the safe, and Harper later found it half-submerged in a pond, just where defendant said it would be. In a voluntary interview at the police station, defendant told Harper he and Burnett had driven to Tolono, loaded up the safe, and taken it to his home in Urbana to cut it open. Defendant also told Harper the safe contained only documents and no money (something he could have known, of course, only if he had looked inside the safe). In his own case in chief, defendant presented alibi witnesses and then took the stand and denied making the incriminating statements to Harper or helping with the crime. The jury found defendant guilty of burglary.

In his posttrial motion, defendant alleged:

"The [c]ourt erred in not allowing the [d]efendant to accept a negotiated plea to a lesser felony charge on the date of trial because the new charge had not been filed, the paperwork was not available in court[,] and a jury was waiting. The State was willing to proceed with the negotiated plea. The negotiated plea would have been to a [t]heft with a prior, Class 4 felony, for four years in the Illinois Department of Corrections. Later[,] after jury selection[,] the [c]ourt asserted that it would accept a plea to the charge of [b]urglary only."

In the October 2002 hearing on the motion and sentencing, the court stated:

"As to [the] request that the [d]efendant plead to lesser charges, one, there were no lesser charges. The jury was here. The matter was ready to proceed for trial. If there are no lesser charges on file, the [d]efendant cannot plead to them. He was charged with the burglary.

And after the jury was picked, the [c]ourt did advise that there was no sense in wasting anybody's time in anything aside from the burglary at that point, because that's the only charge we had. That's what we were dealing with. And that's what the jury was there for.

[The] State wasn't dismissing the burglary. Since [it] didn't dismiss, that was the only charge there for him to be tried on.

So, there was no reason, no showing, or anything that there was any lesser charge, and the [c]ourt wasn't going to give a continuance at that point, so I don't see any error there."

The court then denied defendant's posttrial motion and, after a sentencing hearing, sentenced him to 15 years' imprisonment.

This appeal followed.

## II. ANALYSIS

Defendant argues the trial court erred by refusing to consider the negotiated plea agreement. The court's rationale for refusing to do so was twofold: (1) it was impossible for defendant to plead guilty to a charge the State had not yet filed; and (2) granting a continuance long enough for the State to draft the charge would have been unfair to the people who had arrived for jury duty and who were, at that very moment, waiting outside the courtroom for *voir dire* to begin.

■ Supreme Court Rule 402(d)(2) provides:

"If a tentative plea agreement has been reached by the parties which contemplates entry of a plea of guilty in the expectation that a specified sentence will be imposed or that other charges before the court will be dismissed, the trial judge may permit, upon request of the parties, the disclosure to him of the tentative agreement and the reasons therefor in advance of the tender of the plea. At the same time he may also receive, with the consent of the defendant, evidence in aggravation or mitigation. The judge may then indicate to the parties whether he will concur in the proposed disposition; and if he has not yet received evidence in aggravation or mitigation, he may indicate that his concurrence is conditional on that evidence being consistent with the representations made to him." 177 Ill. 2d R. 402(d)(2).

The prosecutor told the court he had "tendered an offer to [defense counsel]," the approval of which was "in the discretion of the [c]ourt at this point." Defense counsel told the court defendant had "decided to accept that offer if the [court] would entertain it." Thus, according to both parties' unequivocal representations to the court, a viable plea agreement was on the table.

This case is distinguishable from *People v. Henderson*, 211 Ill. 2d 90, 95, 809 N.E.2d 1224, 1227 (2004), in which the defendant rejected the State's offer and made a counteroffer, which the State never accepted. "The State did not offer to negotiate further, it did not ask the court for the opportunity to do so or protest the deprivation of such an opportunity, and it did not indicate that an offer was pending." *Henderson*, 211 Ill. 2d at 97, 809 N.E.2d at 1228. The supreme court concluded "there was no negotiated plea agreement presented by the parties for the court's consideration." *Henderson*, 211 Ill. 2d at 106, 809 N.E.2d at 1233.

In the present case, by contrast, the parties told the court they had a meeting of the minds, a plea agreement. The State argues "the parties left the [trial] court in the dark respecting the terms of the agreement." On the contrary, the court left itself "in the dark." Evidently, the parties were fully prepared to disclose the terms of the proposed plea agreement. The court had to decide whether it would hear those terms—whether it would "permit *** the disclosure to [it] of the tentative agreement and the reasons therefor in advance of the tender of the plea." 177 Ill. 2d R. 402(d)(2). Upon learning that no lesser charge had been drafted, the trial court said "no" and abruptly ended the inquiry. The court was willing to entertain only an unconditional guilty plea to the charge on file.

In its brief, the State claims: "The court stated its disapproval of the plea offer once it learned, evidently after jury selection, that its terms included a reduction of the charge to theft and a negotiated sentence of [four] years' imprisonment." The State thereby implies that after *voir dire,* the court considered the terms of the plea agreement and rejected it on substantive grounds. The State cites no page of the record in support of that implication. See 177 Ill. 2d R. 612(i) (Rule 341 applicable to briefs in criminal appeals); 210 Ill. 2d R. 341(e)(6) ("facts necessary to an understanding of the case, stated accurately and fairly *** and with appropriate reference to the pages of the record on appeal"); *People v. Johnson,* 192 Ill. 2d 202, 206, 735 N.E.2d 577, 580 (2000) ("failure to include record citations when the argument requires an examination of the record results in waiver of the issue on appeal"). From the court's remarks in the hearing on defendant's posttrial motion, we learn the following: "[A]fter the jury was picked, the [c]ourt did advise that there was no sense in wasting anybody's time in anything aside from the burglary at that point, because that's the only charge we had." We find no hint, in those remarks, that the court considered the terms of the plea agreement or rejected it for any reason other than a lesser charge had not yet been drafted.

■ Just because a court may reject a proposed plea agreement (*People v. Ferguson,* 46 Ill. App. 3d 732, 734, 361 N.E.2d 333, 334 (1977)), it does not follow that a court may reject one for any reason at all. The court must use "sound judicial discretion." *People v. Thomas,* 246 Ill. App. 3d 708, 715, 616 N.E.2d 695, 700 (1993); *People v. Boyd,* 66 Ill. App. 3d 582, 588, 384 N.E.2d 414, 419 (1978). Because we review both the rejection of a guilty plea (*People v. Peterson,* 311 Ill. App. 3d 38, 45, 725 N.E.2d 1, 7 (1999)) and the determination of a sentence (*People v. Wilson,* 143 Ill. 2d 236, 250, 572 N.E.2d 937, 944

(1991)) for an abuse of discretion, and because the plea agreement in this case combined a proposed guilty plea with a proposed sentence, we ask whether the trial court abused its discretion (*Thomas*, 246 Ill. App. 3d at 716, 616 N.E.2d at 700).

A court abuses its discretion if "no reasonable person would agree with the decision" or if the decision has no basis in "facts, logic, or reason but is arbitrary, unreasonable, or unconscionable." *Peterson*, 311 Ill. App. 3d at 45, 725 N.E.2d at 7.

■ A defendant must plead to a "charge" (725 ILCS 5/113—1 (West 2002)), which is, by definition, "a *written* statement[,] presented to a court[,] accusing a person of the commission of an offense" (emphasis added) (725 ILCS 5/102—8 (West 2002)). Defendant could not have been convicted of an offense the State had not charged him with committing; he could have been convicted, however, "of an offense not expressly included in the charging instrument if that offense [was] a lesser[-]included offense of the crime expressly charged." *People v. Novak*, 163 Ill. 2d 93, 105, 643 N.E.2d 762, 769 (1994). The State does not dispute that in the present case, theft (720 ILCS 5/16—1(a)(1)(A) (West 2000)) was included within the charged offense of burglary. See *People v. Hamilton*, 179 Ill. 2d 319, 328, 688 N.E.2d 1166, 1171 (1997). Defense counsel told the trial court that defendant wished to plead guilty to a "lesser charge." If only the court had paused to hear the terms of the plea agreement, it might have found that drafting another charge was unnecessary. See *Novak*, 163 Ill. 2d at 105, 643 N.E.2d at 769.

Defendant never pointed out to the trial court that drafting a new charge was unnecessary. Arguably, he is now in no position to complain of the trial court's erroneous assumption to the contrary. See *People v. Lang*, 113 Ill. 2d 407, 469, 498 N.E.2d 1105, 1133 (1986) (arguments omitted in trial court are "waived on appeal"). Even so, preparing a run-of-the-mill theft charge would have been so easy that it should not have even been a consideration. Because plea bargaining is "vital to and highly desirable for our criminal justice system" (*People v. Evans*, 174 Ill. 2d 320, 325, 673 N.E.2d 244, 247 (1996)), we conclude no reasonable person could agree with a decision to reject out of hand a proposed plea agreement simply because it contemplates the minuscule expenditure of time necessary to draft a charge. Potential jurors, faced with the alternative prospect of attending a day or more of trial, would no doubt consider it time well spent. As defendant says, "[d]uring the time it took the court to rule on the motions [*in limine*] and [for the parties to] select the jurors, the prosecutor could have prepared the necessary paperwork for [defendant] to plead guilty."

We are aware of no Illinois authority holding that a court may

refuse to consider a plea agreement simply because the parties tender it on the day of trial, immediately before *voir dire*. In *People v. Henderson*, 334 Ill. App. 3d 290, 295, 777 N.E.2d 1048, 1052 (2002), *rev'd*, 211 Ill. 2d 90, 809 N.E.2d 1224, the Third District held the trial court had abused its discretion by refusing to consider a plea agreement for the sole reason that a court-imposed deadline for tendering such an agreement had passed. (In the present case, it does not appear that the trial court ever gave the parties advance notice of any such deadline.) The supreme court reversed that decision, however, on the ground that the parties had in fact never tendered a plea agreement to the trial court. *Henderson*, 211 Ill. 2d at 106, 809 N.E.2d at 1233. By his counteroffer, the defendant had rejected the State's offer, and thus no agreement was on the table. *Henderson*, 211 Ill. 2d at 104, 809 N.E.2d at 1232. The precedential scope of a decision is limited to its facts (*Prairie Eye Center, Ltd. v. Butler*, 305 Ill. App. 3d 442, 448, 713 N.E.2d 610, 615 (1999)), and because the supreme court negated the fact upon which the appellate court's holding in *Henderson* depended, *i.e.*, the existence of a plea agreement, we infer it negated the holding as well.

We seem, therefore, to have an issue of first impression in Illinois jurisprudence. Having given no advance notice of a deadline for tendering plea agreements, does a trial court abuse its discretion by rejecting a plea agreement on the ground of untimeliness if the parties tender it immediately before *voir dire*? Rule 402 offers no guidance. We turn to cases from other jurisdictions.

Some jurisdictions have held it is an abuse of discretion for a court to refuse to consider a plea agreement solely on the ground of untimeliness. *State v. Darelli*, 205 Ariz. 458, 464, 72 P.3d 1277, 1283 (2003) (without a rule promulgated by the Arizona Supreme Court, plea cutoff dates are impermissible); *State v. Hager*, 630 N.W.2d 828, 835-36 (Iowa 2001); *State v. Sears*, 208 W. Va. 700, 705, 542 S.E.2d 863, 868 (2000); *United States v. Shepherd*, 102 F.3d 558, 562 (D.C. Cir. 1997); *United States v. Robertson*, 45 F.3d 1423, 1438-39 (10th Cir. 1995) ("scheduling concerns alone are not of sufficient importance to justify the infringement of prosecutorial discretion" in "charge bargains").

Other jurisdictions have held that a court may refuse to consider plea agreements tendered after the expiration of a guilty-plea deadline. *People v. Grove*, 455 Mich. 439, 464, 566 N.W.2d 547, 558 (1997); *People v. Cobb*, 139 Cal. App. 3d 578, 585, 188 Cal. Rptr. 712, 716 (1983); *United States v. Gamboa*, 166 F.3d 1327, 1331 (11th Cir. 1999); *United States v. Moore*, 916 F.2d 1131, 1136 n.11 (6th Cir. 1990); *United States v. Ellis*, 547 F.2d 863, 868 (5th Cir. 1977); *People v. Jasper*, 17 P.3d 807, 814 (Colo. 2001) (subject to a good-cause exception); *State v. Bowen*, 269 N.J. Super. 203, 213, 634 A.2d 1371, 1377 (1993) (same).

We have found no case, from any jurisdiction, holding that without advance notice to the parties of a plea cutoff date, a court may summarily reject, as untimely, a plea agreement tendered on the day of trial, before *voir dire*. The State cites *Grove*, 455 Mich. at 467, 566 N.W.2d at 559, *Ellis*, 547 F.2d at 868, and *Cobb*, 139 Cal. App. 3d at 581, 188 Cal. Rptr. at 713, for the proposition that a court has "broad discretion *** in deciding whether to accept tardy plea agreements." But the State does not explain how, absent an announced deadline, the parties are to know when a plea agreement will be "tardy." Rule 402 contains no time limitation. In the cases the State cites, the defendants had fair warning of the plea cutoff date. *Grove*, 455 Mich. at 465, 566 N.W.2d at 558; *Ellis*, 547 F.2d at 868; *Cobb*, 139 Cal. App. 3d at 581, 188 Cal. Rptr. at 714.

■We hold that if the parties tender a plea agreement before trial, it is arbitrary for a court to summarily reject it as late unless the court told the parties, in advance, what "late" meant with respect to tendering plea agreements. To fairly and reasonably enforce a deadline for tendering plea agreements, a court must first give the parties advance notice of the deadline. See *Jasper*, 17 P.3d at 814 ("One *** limitation on the trial court's discretion to enforce a plea deadline is the requirement that the parties must have adequate notice of the deadline"); *Moore*, 916 F.2d at 1136 n.11 ("if the Government makes its first plea offer to a defendant the morning of trial and defendant accepts, the rejection of the plea under those circumstances may well constitute an abuse of discretion [unless the court set a plea cutoff date]"). It does not appear from the record in this case that the court ever notified the parties in advance that it would refuse to consider plea agreements tendered after a certain date. The court was apparently still willing to entertain an unconditional guilty plea to the burglary charge—despite the potential jurors waiting outside the courtroom. We hold the court abused its discretion in refusing to consider the plea agreement.

■ Because we are reversing the conviction and sentence and remanding this case for further proceedings, we consider whether the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. *People v. Fornear*, 176 Ill. 2d 523, 535, 680 N.E.2d 1383, 1389 (1997). Having thoroughly reviewed the evidence, we find it sufficient to support the guilty verdict. *Fornear*, 176 Ill. 2d at 535, 680 N.E.2d at 1389. We therefore hold that double jeopardy would not bar a new trial. *Fornear*, 176 Ill. 2d at 535, 680 N.E.2d at 1389. We make no finding, however, on defendant's guilt that would be binding on retrial. *Fornear*, 176 Ill. 2d at 535, 680 N.E.2d at 1389.

## III. CONCLUSION

Given the record before us, we hold the trial court abused its discretion by refusing to hear the proposed plea agreement. Therefore, we reverse defendant's conviction and sentence and remand this case for further proceedings with a direction that the court consider the terms of the plea agreement. See *Sears*, 208 W. Va. at 705, 542 S.E.2d at 868; *Hager*, 630 N.W.2d at 837. Because we find sufficient evidence of defendant's guilt, double jeopardy would not bar a retrial if, in the reasoned exercise of its discretion, the court declines to accept the substantive terms of the plea agreement. Our disposition herein makes defendant's remaining contentions moot.

Reversed and remanded.

JUSTICE COOK, specially concurring:

I disagree with the Third District's decision in *Henderson*, 334 Ill. App. 3d at 294, 777 N.E.2d at 1052, holding that a trial court abuses, or abdicates, its discretion when it refuses to consider a negotiated plea agreement presented by the parties beyond a deadline set by the court. I agree with Justice Holdridge's dissent and the decisions from other jurisdictions that say that plea deadlines are an integral part of the court's case-management authority and may be enforced at least where the parties have actual notice of the court's practice and where exceptions to the deadline are permitted for good cause. Trial courts are rightly concerned with agreements made "on the courthouse steps" after the expense and inconvenience of assembling a jury for trial. It is completely appropriate for trial courts to tell defendants that negotiated pleas will not be accepted after a certain deadline, and if a defendant decides to plead after that time, only an open plea will be possible.

What we have in this case, however, is not simply a trial court enforcing its deadline for accepting a negotiated plea. What we have in this case is a situation where defendant is in the Department of Corrections, defense counsel is unable to speak to defendant about the plea agreement until the night before the trial, and defendant is not allowed to accept the plea agreement until the trial date, at which time it is too late. The court was willing to consider plea agreements, but this defendant was never given an opportunity to present a plea agreement.

I disagree with Justice Turner's dissent. The supreme court in *Henderson* was not concerned with technicalities, such as whether the other charge had been drafted, whether the parties had fully disclosed the plea agreement's terms to the trial court, whether there had been

a request for a Rule 402 conference, or the like. *Henderson* refused to address the issue because nothing indicated the parties had actually reached an agreement *or* "that they ever *attempted to present* such an agreement to the circuit court." (Emphasis added.) *Henderson,* 211 Ill. 2d at 92, 809 N.E.2d at 1225. The parties here clearly attempted to present an agreement to the circuit court. Justice Turner's comments that the jury was present, that defendant had been granted four continuances, that the prosecutor had previously tendered the offer, and defense counsel had consulted with defendant on numerous occasions were clearly explained by defense counsel, without any contradiction. 351 Ill. App. 3d at 609-10.

JUSTICE TURNER, dissenting:

I respectfully dissent. As the reviewing court, we have the responsibility to review the trial court's decision with respect to the acceptance or rejection of a negotiated plea for an abuse of discretion and not to substitute our judgment for that of the trial court. See *Henderson,* 211 Ill. 2d at 103, 809 N.E.2d at 1231.

In my view, the majority's criticism of the trial court is unjustified. First, I question whether the trial court even concluded the parties had reached a negotiated plea agreement. The existence of such an agreement is not as clear-cut as the majority suggests. Here, the court questioned the parties as to what "the situation" was, and the exchange between the court and the parties indicates the parties had not reached an agreement before the court asked defendant if he still wished to plead guilty. Additionally, the State had not even drafted the other charge, and thus it was uncertain whether defendant would plead guilty to that charge.

Further, the State did have to draft the other charge since it was not a lesser-included offense of the charged offense. The alleged offense to which defendant was to plead guilty was theft with a prior burglary. Section 16—1(b)(2) of the Criminal Code of 1961 (720 ILCS 5/16—1(b)(2) (West Supp. 2001)) requires the indictment or information to state the prior conviction. The burglary indictment did not mention defendant's prior burglary conviction, and thus the State did need to draft the lesser charge.

Next, the majority infers the trial court summarily rejected the agreement without pausing to hear what the new charge and proposed sentence would be. This inference ignores that (1) neither attorney disclosed the plea agreement's terms to the court, (2) the parties never requested a Rule 402 conference, (3) the jury venire was present and the case was ready to proceed, (4) defendant had been granted four continuances, and (5) the prosecutor told the court he had previously

tendered the offer and defense counsel had consulted with defendant on numerous occasions. The court's decision in this case was based on more than timeliness, and the court exercised its discretion in refusing to accept the plea.

Given these circumstances, I see no abuse of discretion on the part of the trial court and would affirm the court's judgment.

As a final matter, I question the majority's direction to the trial court to "consider the terms of the plea agreement." 351 Ill. App. 3d at 608. This presumes the State is still tendering the plea offer defendant desires to accept. This seems highly unlikely, and because I do not believe this court can compel the State to reinstate its previous offer and prepare the necessary charge, the majority's mandate is neither practical nor consequential.

Our supreme court has held that "the State's Attorney, as a member of the executive branch of government, is vested with exclusive discretion in the initiation and management of a criminal prosecution." *People ex rel. Daley v. Moran*, 94 Ill. 2d 41, 45, 445 N.E.2d 270, 272 (1983). "That discretion includes the decision whether to prosecute at all, as well as to choose which of several charges shall be brought." *Moran*, 94 Ill. 2d at 45-46, 445 N.E.2d at 272. Moreover, our United States Supreme Court has noted that a prosecutor can decline to charge or offer a plea bargain in any particular case. *McCleskey v. Kemp*, 481 U.S. 279, 312, 95 L. Ed. 2d 262, 291, 107 S. Ct. 1756, 1778 (1987).

In *Moran*, 94 Ill. 2d at 46, 445 N.E.2d at 272, the trial judge ordered the State to file an information and thereafter proceeded with disposition of that offense over the State's objection. The supreme court found "such action by a trial judge to be an impermissible exercise by the judicial branch of powers belonging exclusively to the executive and in direct contravention of the applicable statutory mandates." *Moran*, 94 Ill. 2d at 46, 445 N.E.2d at 272.

Here, on remand the majority does not appear to give the State any discretion regarding plea negotiations. The State has already successfully prosecuted defendant, and he has received a 15-year prison term. In my view, requiring the State to draft and file a reduced charge in exchange for a four-year prison term exceeds this court's authority.